**James R. SCOTT, Appellant,**

v.

**Indiana R. SCOTT, Appellee.**

**No. 20250.**

United States Court of Appeals District of Columbia Circuit.

Argued April 19, 1967.

Decided July 27, 1967.

Petition for Rehearing En Banc Denied Sept. 28, 1967.

Mr. James J. Laughlin, Washington, D. C., for appellant.

Mr. Ted D. Kuemmerling, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Charles T. Duncan, Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee. Mr. Richard W. Barton, Asst. Corp. Counsel, also entered an appearance for appellee.

Mr. Charles H. Mayer, Washington, D. C. (appointed by this court as amicus curiae), filed a memorandum as amicus curiae.

Before WILBUR K. MILLER, Senior Circuit Judge, and DANAHER and BURGER, Circuit Judges.

DANAHER, Circuit Judge:

We allowed this appeal from a decision [1] of the District of Columbia Court of Appeals to consider the claim of the appellant that he was entitled to an evidentiary hearing before the court revoked its order staying execution of his commitment to jail for a civil contempt.[2]

The Domestic Relations Branch of the District of Columbia Court of General

1. Scott v. Scott, 220 A.2d 95 (D.C.App. 1966).

2. Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966);

cf. Duell v. Duell, 85 U.S.App.D.C. 78, 80, 81, 178 F.2d 683, 685, 686, 14 A.L.R. 2d 560 (1949).

Sessions on October 3, 1961 entered its order,[3] with the *consent* of the appellant, that the latter pay $20 per week toward the support and maintenance of his wife and two children. The court had then found that the appellant was financially able to make payment as thus fixed. Repeatedly thereafter the appellant defaulted in meeting the payment schedule. On March 9, 1965 the court found that Scott had "failed and refused to obey" the court's order "although able so to pay" and was therefore in contempt. He was ordered committed to jail for a period of 180 days "or until such earlier time as he shall purge himself of his contempt."

A stay of execution was thereupon ordered upon condition that Scott "shall not fail to make another $20.00 payment as the same comes due every Saturday, and in addition thereto, shall pay $5.00 every Saturday on the arrears." The conditional payment order on its face would appear to be entirely reasonable.

■ Yet, following the March, 1965 order, Scott had paid only $130 and as of January 7, 1966 was $2,270 in arrears. It is apparent that the intermediate appellate court is quite aware that an order of imprisonment must take into account the financial ability of the contemnor to comply with the terms of a court order,[4] as has been well developed in Truslow v. Truslow, 212 A.2d 763, 765 (D.C.App. 1965). There the District of Columbia Court of Appeals commented upon the contemnor's failure to present to the trial court competent evidence of his inability financially to pay the total amount set by the order. The court observed that it had been open to the appellant to take prompt measures to apply for the aid of the court in having his contribu-

tion toward support of his family realistically reduced or corrected "if his financial situation had changed since the date of the initial order."

Moreover, in the instant case after an order of commitment had been entered on an ex parte application the court said:

"Even then appellant could have sought a suspension of the commitment by making an appropriate showing, *and he is still free to do so.* Hurst v. Hurst, 100 U.S.App.D.C. 77, 242 F.2d 229 (1957). But we cannot consider the existence of an excuse for failure to comply with the order until such excuse is *first presented to and passed upon by the trial court.*" (Emphasis added.)[5]

We do not read the order setting aside the stay of execution as imposing a condition that Scott forthwith pay then and there the entire balance of $2,270 found to be in arrears as of March 9, 1965.[6] Rather, Judge Ryan's order setting aside the stay of execution was simply recording the amount of the *balance* "yet to be paid" under the March, 1965 order. When Judge Waddy had found that the appellant at that time was "able so to pay" the amount in arrears, we deem it clear that his finding was to be related to the conditions upon which the stay of execution had been entered, namely that the appellant "shall not fail" to make total payments of $25 per week. Of that amount, the financial clerk would have applied $5 in reduction of the arrearage.

■ This appellant clearly was in default. He had failed to comply with the conditions fixed by the trial court. The intermediate appellate court had pointed out, not once but on various occasions, the procedures to be followed by a contemnor

3. The proceeding arose under the Uniform Reciprocal Enforcement of Support Act, D.C.CODE §§ 30–301 *et seq.*, and see §§ 30–303 and 315 (Supp. V, 1966).

4. As the Supreme Court pointed out in the *Shillitani* case, *supra* note 2, 384 U.S. at 371, 86 S.Ct. at 1536, "[T]he justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the

court's order." And see Duell v. Duell, *supra* note 2.

5. Scott v. Scott, *supra* note 1, 220 A.2d at 96. In the cited *Hurst* case we affirmed an order of commitment without prejudice to the appellant's seeking relief in the District Court.

6. As of March 14, 1967, Scott since 1961 paid through the court's financial clerk only $1,655.

who would seek suspension of a commitment. He must make an appropriate showing that he is unable to comply with the court's order, and the place for that showing is in the trial court. As Chief Judge Hood observed, "[H]e is still free to do so." [7]

Affirmed.

7. Scott v. Scott, *supra* note 1, 220 A.2d at 96.