**Earmon SMITH, Appellant,**

v.

**Gwendolyn SMITH, Appellee.**

No. 80–800.

District of Columbia,
Court of Appeals.

Submitted Jan. 8, 1981.
Decided Feb. 6, 1981.
As Amended March 5, 1981.

A. Palmer Ifill, Washington, D. C., for appellant.

Brandon J. Fields, with whom Richard Boswell, Supervising Atty., Washington, D. C., was on the brief, for appellee.

Before NEWMAN, Chief Judge, and GALLAGHER and FERREN, Associate Judges.

FERREN, Associate Judge:

This case presents a central question: whether the trial court abused its discretion by ordering appellant, without a hearing, to return to prison for failure to meet his child support obligations under the terms of a stay of a prior commitment for contempt. Before the court ruled, appellant had filed a motion to reduce support payments alleging inability to pay. Accordingly, the trial court's finding that appellant offered no defense or justification for his failure to comply with the terms of the stay is "plainly wrong" and "without evidence to support it." D.C.Code 1973, § 17–305(a). Because a contemnor may not lawfully be imprisoned for failure to support his or her family if the contemnor is financially unable to do so,

the trial court abused its discretion in lifting the stay without considering appellant's asserted inability to comply with its terms. We reverse.

## I.

Married on February 14, 1970, in the District of Columbia, appellant Earmon Smith, Jr., and appellee Gwendolyn Smith entered into a separation agreement on September 7, 1973. The agreement required appellant to pay $25.00 per week for support of his wife and $50.00 per week for support of their minor child. On October 22, 1975, the trial court granted the parties an absolute divorce, "confirmed and ratified" the separation agreement, and ordered appellant to pay through the clerk of the court weekly alimony of $25.00 and child support of $50.00.

After numerous efforts to obtain payments, appellee filed and served on appellant a motion asking the court to hold appellant in contempt. On March 13, 1980, the trial court did so, finding that "the defendant has failed and refused to obey said order of this Court in that he is presently in arrears in the amount of $4,560.36 *on his obligation to pay support for his former wife and child* [a]lthough able so to do . . . ." The court committed appellant to 30 days imprisonment, with the qualification that he "can purge himself by paying $4,560.36 arrears in a lump sum or as otherwise consented to by counsel for [plaintiff-appellee]." Appellant did not oppose the motion or appeal the contempt order.

On March 19, 1980, the trial court ordered appellant's release from jail and stayed further execution of the commitment order upon conditions stipulated by the parties. The terms of the stay provided:

1. Defendant's [second] wife, Melba Smith, will guarantee payment to plaintiff of $75. per week, *commencing on or before March 26, 1980 and continuing on*

or before each and every succeeding Wednesday, EXCEPT THAT payment for the week in which this Order issued shall be made on or before March 21, 1980 and shall be in the amount of $37.50 only.

2. By consent of the parties, this stay of further execution shall be set aside automatically and without hearing upon a failure of the payments required by paragraph 1 above.

3. When defendant becomes employed and begins making regular monthly payments to plaintiff, Mrs. Melba Smith shall be released as guarantor and defendant shall assume full responsibility thereafter.

4. Defendant shall return to Court at 9:30 a. m. on April 15, 1980, for a financial review, bringing with him evidence of his then current financial and employment status and of the status of his retirement from the U.S. Postal Service.

On April 9, 1980, appellant filed a motion to reduce support payments because of inability to pay. Before the court ruled on this motion, appellee moved on June 5, 1980, to set aside the stay without a hearing, in accordance with the provision for automatic lifting of the stay "upon a failure of the payments required . . . ." Appellee stated that since issuance of the stay, she had received only $572.50 of the total $787.50 in weekly support due. Although appellant had notice of this motion, he did not formally oppose it.

On June 19, 1980, the trial court set aside the stay of execution and ordered appellant back to jail to serve the remaining 21 days of the original commitment, unless he purged himself of contempt by paying off the balance of his arrearages.[1] The court ruled that appellant's payment of $572.50 rather than $787.50 "constituted a material 'failure of the payments required'" under the terms of the stay, "thereby entitling *plaintiff to invoke her right thereunder to* have the 'stay of further execution . . . set

---

1. In calculating this sum, the court took the arrearages due as of the date of the original contempt order ($4,560.36) and subtracted the weekly payments made since issuance of the stay ($572.50), leaving a balance of $3,987.86.

The court did not add to the arrearages the deficiency of $215.00 in the weekly payments since issuance of the stay. *See generally John-son v. Johnson*, D.C.App., 195 A.2d 406, 408 (1963).

aside automatically and without hearing.'" The court further found that appellant had not opposed appellee's motion to set aside the stay "or otherwise proffered any defense or justification for his violation of the Consent Order." The court referred appellant's long-continued motion to reduce support payments to the clerk to set a hearing "at an appropriate time—together with a general review of defendant's finances."[2]

■ On June 27, 1980, appellant filed a motion to stay and to reconsider the June 19 order setting aside the stay of the contempt commitment. On July 2, 1980, the trial court denied this motion, stating that the grounds of the motion were irrelevant to appellant's contempt, but went only to the motion to reduce support.[3] On July 15, 1980, appellant filed timely notices of appeal from the orders of June 19 and July 2. See D.C.Code 1973, § 11–721(a)(1); D.C. App. R. 4 II(a)(1).[4]

## II.

■ The law of the District provides two basic means of protecting the rights of a family entitled to support. First, when a person fails to make support payments due under a court order, each accrued, unpaid installment becomes a collectable debt. *Kephart v. Kephart,* 89 U.S.App.D.C. 373, 380–81, 193 F.2d 677, 684 (1951) (en banc) (construing predecessor of D.C.Code 1978 Supp., § 16–914), *cert. denied,* 342 U.S. 944,

72 S.Ct. 557, 93 L.Ed. 702 (1952). In general, the court may not retroactively modify the sum owing, even though the family has not formally reduced the debt to a money judgment. *Id.; cf. Sistare v. Sistare,* 218 U.S. 1, 16–17, 30 S.Ct. 682, 686, 54 L.Ed. 905 (1910) (same; New York law). The court may, however, upon a proper showing, prospectively increase or decrease a support obligation as of the date when the moving party applied for the modification. *Trezevant v. Trezevant,* D.C.App., 403 A.2d 1134, 1137 (1979); *Rhodes v. Gilpin,* D.C.App., 264 A.2d 500 (1970).

■ Second, the court may hold the debtor in civil contempt to force compliance with the support order. *See United States v. United Mine Workers,* 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); D.C. Code 1973, § 11–944. Moreover, District of Columbia statutes explicitly allow imprisonment upon a finding of civil contempt for failure to provide support for one's family ordered by the court in connection with divorce. *See* D.C.Code 1978 Supp., §§ 16–911 to 912. But *cf. id.,* § 16–916 (imprisonment for contempt not authorized for violation of maintenance decree). The law, however, generally disfavors imprisonment for debt. *Lundregan v. Lundregan,* 102 U.S. App.D.C. 259, 260, 252 F.2d 823, 824 (1958); *see* D.C.Code 1973, § 15–320(c). Thus, the trial court must predicate its application of this severe sanction on a finding that the

---

2. As of the date of this order, the court had not yet held the financial review that the stay had set for April 15, 1980.

3. The record also contains a motion by appellant "to modify adjudication of contempt order and stay, and consent judgment entered herein." Although appellant apparently served this motion on June 26, 1980, the record does not reflect the filing date or any action by the trial court on this motion.

4. On July 24, 1980, appellant filed in this court an application for a stay pending appeal of the June 19 order recommitting appellant to jail. *See* D.C.App. R. 8. This court denied the application on August 20, 1980. While it therefore would appear that appellant has already served the remaining term of his contempt commitment, this case is not moot. Although this proceeding is a civil one, like a criminal case it has resulted in the serious penalty of imprison-

ment. The Supreme Court has refused to hold moot criminal cases in which appellant served his or her term before the Court rendered its decision, at least when the appellant used available legal means to seek postponement of service of the sentence until resolution of the case on appeal. *See Sibron v. New York,* 392 U.S. 40, 51–53, 88 S.Ct. 1889, 1896–1897, 20 L.Ed.2d 917 (1968). The only reason that the appellant in the present case has already served his term for contempt is that the trial court and this court refused his requests to stay the commitment order pending appeal. In these circumstances it would be wholly unfair to rule that this court now lacks jurisdiction of this appeal. *See id.* at 53; *compare In re DeNeueville,* D.C. App., 286 A.2d 225, 228 (1972) (appeal of criminal contempt conviction moot when appellant failed to request stay pending appeal).

defendant is able to pay the debt owed. *Lundregan, supra* at 260–61, 252 F.2d at 824–25; *Truslow v. Truslow,* D.C.App., 212 A.2d 763, 764–65 (1965); *see Payton v. Payton,* D.C.App., 187 A.2d 899, 900 (1963). In making this determination, of course, the trial court considers all the circumstances of the case, including whether the defendant's asserted inability to pay is due to involuntary financial straits or a voluntary decision to reduce his or her income. *See Freeman v. Freeman,* D.C.App., 397 A.2d 554, 556 (1979).

▮▮▮ When faced with a motion for contempt establishing noncompliance with a support order, the defendant bears the burden of showing an inability to pay or some other excuse for failure to comply. *Scott v. Scott,* 127 U.S.App.D.C. 245, 246–47, 382 F.2d 461, 462–63 (1967); *Bolden v. Bolden,* D.C.App., 376 A.2d 430, 433 (1977); *Suber v. Suber,* D.C.App., 195 A.2d 411, 413 (1963); *Johnson v. Johnson,* D.C.App., 195 A.2d 406, 407 (1963). Ability to pay, of course, "is not merely a function of actual earnings but is to be derived, more broadly, from earning capacity in the current job market, given one's educational background and work experience." *Freeman, supra* at 556. Even a meager showing, however, may be sufficient to suggest inability to pay. In *Truslow, supra,* for example, the husband had failed to seek a reduction of his support obligations, but the record contained evidence of his difficulty in making his weekly payments. *Id.* at 765. Implying that the trial court should have considered this information, this court reversed the commitment for contempt because of the absence of a finding as to the husband's ability to pay. *See id.*

▮▮▮ A court may order commitment for contempt but stay imprisonment on the condition of compliance with reasonable, specific requirements. *See Scott, supra,* 127 U.S.App.D.C. at 246, 382 F.2d at 462; *Armstrong v. Legal Aid Society,* D.C.App., 250 A.2d 563, 565 (1969). If the contemnor violates these conditions, the court may revoke the stay. *See Scott, supra,* 127 U.S. App.D.C., at 246, 382 F.2d at 462; *Armstrong, supra* at 565.[5] Moreover, "in the absence of a motion [by the contemnor] for additional relief," we have held that the court need not hold a hearing before revoking the stay. *Armstrong, supra,* at 565. The court, nonetheless, must consider the ability of the contemnor to comply with the stay and thus take into account the financial circumstances of the contemnor known to the court. *Scott, supra,* 127 U.S.App. D.C., at 246, 382 F.2d at 462. The error in this case lies here.

### III.

▮▮▮ Because appellant's motion to reduce support gave the trial court sufficient notice that he might be unable to meet his obligations under the stay of the contempt commitment, the trial court was obliged to hold a hearing and make a finding of ability to pay before revoking the stay. More specifically, appellant's motion to reduce support was, in effect, a request for relief from the terms of the stay, *see Armstrong, supra* at 565,[6] for it related directly to his ability to keep current his regular weekly support payments.[7]

---

**5.** In both *Scott* and *Armstrong,* the trial court revoked a stay of execution of a contempt commitment on "ex parte" application. *See Scott, supra,* 127 U.S.App.D.C. at 246, 382 F.2d at 462; *Armstrong, supra* at 564. In the present case, appellant had notice of the motion to set aside the stay, but chose not to oppose it.

**6.** It is true that although appellant had notice of the motion to set aside the stay, he did not formally oppose it. His passivity, however, was due in part to his earlier filing of the motion to reduce support. Hearings on that motion had been continued four times, apparently at least in part because the court feared

that a ruling on that motion would conflict with the outstanding contempt order. Appellant's failure to file a formal opposition to the motion to set aside the stay was perhaps unfortunate, but it did not deprive the motion to reduce support of relevance to his ability to comply with the terms of the stay.

**7.** Contrary to appellee's view, the payments under the stay did not apply only to the arrearages for which the court had originally held appellant in contempt. It is true that, in lifting the stay, the trial court properly permitted appellant to purge himself of contempt by paying only $3,987.86, the arrearages due as of the

Moreover, the motion fully met appellant's burden of alleging this inability. See *Scott, supra,* 127 U.S.App.D.C. at 246–47, 382 F.2d at 462–63; *Armstrong, supra* at 565. An accompanying affidavit stated that appellant's only income was $125.00 per week from unemployment compensation, which made him unable to afford the $75.00 per week support payments. An attached financial statement showed expenses in excess of income and liabilities in excess of assets.[8]

In summary, because appellant, through his motion to reduce support, in effect had sought relief from the terms of the stay, the trial court's finding that appellant had not "proffered any defense or justification for his violation of the Consent Order" was "plainly wrong" and "without evidence to support it." D.C.Code 1973, § 17–305(a). Thus, the trial court abused its discretion in revoking the stay and committing appellant to jail on the basis of this erroneous finding.[9] Instead, the trial court should have held a hearing and made a finding as to

appellant's ability to comply with the terms of the stay before deciding whether to revoke it.[10]

*Reversed.*

---

date of the original contempt order ($4,560.36) less the weekly payments made under the terms of the stay ($572.50). *See* note 1 *supra.* The application of this rule of legal accounting, however, did not change the plain language of the stay, which required only regular, current payments.

8. In her opposition to this motion, appellee expressed her need for the support payments and her inability to collect from appellant. She further alleged that appellant was able to meet his support obligations: appellant's second wife was employed full time at a salary sufficient to support both herself and appellant, and appellant had additional income from his own jobs and unemployment compensation. It is not for us to resolve these questions; the trial court is the appropriate forum for making the initial determination of ability to pay. *Scott, supra,* 127 U.S.App.D.C. at 247, 382 F.2d at 463; *Lundregan, supra,* 102 U.S.App.D.C. at 261, 252 F.2d at 825; *Truslow, supra* at 765.

9. Similarly, the trial court abused its discretion in refusing to reconsider its order setting aside the stay on the ground that the motion to reconsider contained information relevant only to the motion to reduce support, and not to the question of the appellant's contempt.

10. We need not resolve the question whether the trial court, in every case, must make a specific finding of ability to comply with the

terms of a stay before revoking it. Such a conclusion would appear to flow from the rule of *Lundregan, supra,* and *Truslow, supra,* that a contempt commitment is invalid unless the trial court finds that the contemnor has the ability to pay the judgment due. In contrast, in affirming the propriety of an ex parte revocation of a stay of a contempt commitment when the contemnor has not challenged the terms of the stay, the appellate courts of this jurisdiction have not required a finding of ability to pay (nor specifically addressed the issue). *See Scott, supra,* 127 U.S.App.D.C. at 246, 382 F.2d at 462; *Armstrong, supra* at 565; note 5 *supra.* Accordingly, we limit our decision to the facts presented and hold that at least when, as here, the trial court has before it a motion for relief providing evidence of the contemnor's inability to comply with the terms of the stay, it must find that the contemnor is able to meet the terms of the stay before it may revoke the stay.

Because of our disposition of this case, we need not consider appellant's additional contentions that (1) the trial court's finding that appellant materially failed to make support payments in accordance with the stay was "plainly wrong or without evidence to support it," D.C. Code 1973, § 17–305(a); and (2) the trial court's order setting aside the stay was not in the best interests of the parties' minor child.