John R. WAGLEY, Appellant,

v.

Polly King EVANS, Appellee.

No. 07–FM–1184.

District of Columbia Court of Appeals.

Argued March 30, 2009.

Decided May 14, 2009.

Gregory R. Nugent, Washington, DC, for appellant.

Jane Moretz Edmisten, Washington, DC, for appellee.

Before RUIZ and KRAMER, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

A father appeals from an order holding him in civil contempt, with accompanying imprisonment, for failure to pay a substantial arrearage in child support. We affirm.

## I.

Appellant John Wagley and appellee Polly Evans divorced in 1993. At that time, they agreed to joint custody of their two children (L.C., born December 22, 1982, and I.K., born May 6, 1984), and

Wagley was ordered to pay child support.[1] In 1998, Evans filed a motion for sole custody and increased child support. At the hearing, both parties acknowledged that their contentious relationship had harmed their children and contributed to a deterioration in L.C.'s mental health. The trial court granted Evans's motion, finding that "the parents are unable to communicate and act jointly for the good of the children." As part of the new custody and visitation order, Evans received sole legal custody, and Wagley was ordered to pay $2,261 per month in child support.

In February 2002, Wagley, then living in Massachusetts, stopped paying child support. L.C. turned twenty-one in 2003.[2] On March 4, 2005, shortly before I.K. became twenty-one, Evans filed a motion seeking an order for Wagley to show cause why he should not be held in contempt of the 1998 child support order. Nine months later, in December 2005, the trial court granted Wagley, who had been representing himself, a continuance to obtain counsel. In April 2006, Wagley's counsel filed another motion to continue based upon Wagley's age and a doctor's note saying that Wagley was "too ill to travel to Washington." The court granted the second continuance, rescheduling the hearing for August 21, 2006. A week before that date, Wagley sought a third continuance, attaching to his motion an unsworn, typewritten doctor's note stating, without elaboration, that Wagley was "ill, suffering from anxiety and stress, and . . . unable to travel for the next four weeks." Evans

opposed the continuance, arguing that she had been prejudiced by the delays and that Wagley had not shown a valid reason for further delay. The court denied Wagley's motion, concluding that the matter was ripe for decision, that Evans was suffering prejudice from the repeated delays, and that there was "no admissible evidence before the Court with respect to the state of Mr. Wagley's health."

Wagley did not appear at the contempt hearing, although he was represented by counsel. Evans testified that she had not received any child support payment from Wagley since February 2002. Her counsel introduced in evidence a certified copy of the payment detail from the Court Registry confirming that Wagley had not made a payment since February 2002 and was $85,918 in arrears (thirty-eight months times $2,261 per month). Evans explained that she had faxed Wagley each month, for thirteen months, a reminder that the child support had not been paid and advising him to send it as soon as possible. She further testified that Wagley had never told her he was unable to pay and that he had responded to only one of her reminders, stating in July 2002: "I have already explained more than three times, and you know full well, that my child support obligations have been paid more than three times over. Enough is enough." On cross-examination, Evans added that she rarely talked to Wagley and had no personal knowledge of his health. She acknowledged that a Wagley family trust[3]

---

1. In 1995, Wagley was held in contempt for failing to pay $23,636 of the court-ordered child support. He subsequently purged the contempt by paying the amount owed.

2. Tragically, L.C. took her own life in November 2005.

3. In the 1998 custody and support modification proceeding, the trial court, relying upon

Wagley's own financial statement, determined that Wagley received nearly $10,000 per month from sources of income other than wages, most likely the family trust, and that he had $7,631 in net monthly disposable income. The court also found that Wagley "has enough money to live well and to dine extensively at fine restaurants." Although Wagley now contends it is unfair to rely upon this prior information, he has not identified any

had paid many of the children's educational expenses.

At the conclusion of the hearing, the court ruled that Evans had shown, by clear and convincing evidence, the existence of a court order to pay child support and Wagley's failure to comply with the terms of that order. The court then found that Wagley had not established his inability to comply with the court order, and thus that he had acted in contempt of court by refusing to pay any amount of child support since 2002. In response to a contention by Wagley's counsel that a civil contempt order was not an allowable remedy once the children had reached the age of majority, the court requested briefing on that issue. After reviewing the submissions, the trial court concluded that it had the authority to enter the requested contempt order, held Wagley in contempt, and ordered him confined in prison until he purged himself by paying the $85,918.[4]

On appeal, Wagley contends that (1) the trial court abused its discretion by refusing to grant the third continuance, (2) the court did not have authority to enter a civil contempt order when children had reached the age of majority (in this case twenty-one),[5] (3) Evans failed to prove that he had the ability to pay the purge amount, (4) he was entitled to the defense of laches, and (5) financial contributions for the children's education from his family trust should be credited against the purge amount. We address each argument in turn.

## II.

■ "The grant or denial of a continuance rests within the sound discretion of a trial judge, to whom we accord a wide latitude." *Fischer v. Estate of Flax*, 816 A.2d 1, 8 (D.C.2003) (citations omitted). The party seeking the continuance must show "specific and sufficient reasons why [he or she] cannot attend the trial as scheduled or cannot try the case on the date scheduled." Super. Ct. Civ. R. 40–I(d).

■ The trial court did not abuse its discretion when it refused to grant Wagley a third continuance. Evans's motion for a contempt order had been pending for nearly eighteen months, and Wagley had already sought, and received, two continuances. When seeking the third continuance, Wagley's counsel proffered only an unsworn, typewritten statement purporting to be from Wagley's doctor that referred generally to Wagley's health and stress level. As the trial court noted, Wagley's request was "barren of convincing detail." The reasons given were neither "specific" nor "sufficient," as required by Rule 40–I(d). Accordingly, the trial court did not abuse its discretion in denying Wagley's motion for a third continuance.

## III.

■ "In the District of Columbia parents have an unqualified obligation to contribute to the support of their children." *Burnette v. Void*, 509 A.2d 606, 608 (D.C. 1986). To enforce this obligation, the trial court has continuing jurisdiction over a child support order, *see* D.C.Code § 16–914.01 (2001), and has authority to address

manner in which his financial situation has changed and has not offered any more recent information upon which the trial court could make a new determination regarding his financial means.

4. Because Wagley has not come to the District of Columbia, he has not been arrested and imprisoned.

5. *Butler v. Butler*, 496 A.2d 621, 622 (D.C. 1985) ("[F]or purposes of child support, a person is considered a child until age 21.").

noncompliance in several ways, including civil contempt. *See* D.C.Code §§ 11–944(a), 16–916(d); *Smith v. Smith,* 427 A.2d 928, 931 (D.C.1981). While we have not yet expressly ruled that civil contempt remains available as a remedy for violation of a support order after the child has reached the age of majority, we do so now: under District of Columbia law, a judgment for child support arrearages is enforceable by contempt proceedings held after the child has attained age twenty-one. See note 5, *supra.*

When a parent has failed to pay arrearages due on a child support order, most of the courts that have addressed the issue have upheld adjudications of contempt against the defaulting parent even though the child had reached the age of majority. *See Davenport v. Hood,* 814 So.2d 268 (Ala.Civ.App.2000); *Tande v. Bongiovanni,* 142 Ariz. 120, 688 P.2d 1012 (1984); *Allison v. Binkley,* 222 Ark. 383, 259 S.W.2d 511 (1953); *Veras v. Veras,* 45 Conn.Supp. 169, 702 A.2d 1217 (1997); *Gibson v. Bennett,* 561 So.2d 565 (Fla. 1990); *Johnson v. State,* 167 Ga.App. 508, 306 S.E.2d 756 (1983); *Crumpacker v. Crumpacker,* 239 Kan. 183, 718 P.2d 295 (1986); *Goodman v. Goodman,* 695 S.W.2d 865 (Ky.Ct.App.1985); *Green v. Green,* 44 Md.App. 136, 407 A.2d 1178 (1979), *rev'd on other grounds,* 288 Md. 127, 415 A.2d 1131 (1980); *Lombardi v. Lombardi,* 68 Mass.App.Ct. 407, 862 N.E.2d 436 (2007); *Wasson v. Wasson,* 52 Mich.App. 91, 216 N.W.2d 594 (1974); *Saucier v. Saucier,* 121 N.H. 330, 430 A.2d 131 (1981); *Belcher v. Averette,* 136 N.C.App. 803, 526 S.E.2d 663 (2000); *Cramer v. Petrie,* 70 Ohio St.3d 131, 637 N.E.2d 882 (1994); *Lichtenwalter v. Lichtenwalter,* 229 S.W.3d 690 (Tenn.2007); *Ex Parte Hooks,* 415 S.W.2d 166 (Tex.1967); *Fry v. Schwarting,* 4 Va. App. 173, 355 S.E.2d 342 (1987); *Daly v. Snyder,* 117 Wash.App. 602, 72 P.3d 780 (2003); *Griffin v. Reeve,* 141 Wis.2d 699,

416 N.W.2d 612 (1987). Only a few states preclude use of the contempt power to enforce arrearages after a child has attained majority. *See Fox v. Fox,* 56 Ill. App.3d 446, 14 Ill.Dec. 201, 371 N.E.2d 1254 (1978) ("extreme remedy" no longer justified when child no longer dependent); *In re Paternity of L.A. and C.A.,* 803 N.E.2d 1196 (Ind.App.2004) (imposition of civil contempt once child has reached majority violates state constitutional ban on imprisonment for debt); *Hampton v. Hampton,* 303 Minn. 500, 229 N.W.2d 139 (1975) ("extreme remedy" not allowed by statute once child reaches majority). Although civil contempt imposing a prison sentence is, indeed, an extreme remedy, we find the majority position more persuasive because the court's jurisdiction to enforce a support order is a continuing one, and emancipation of the child should not serve to dilute the court's authority to enforce arrearages that accrued before emancipation. The Florida Supreme Court has well-expressed the policy we find compelling:

> Upon emancipation of a minor child, the support-dependent parent is not magically reimbursed for personal funds spent nor debts incurred due to nonpayment of child support. Hardships suffered by a family do not disappear. A family's feelings of indignation from abandonment by the nonpaying parent or from past reliance on public assistance are not forgotten. Society's interest in ensuring that a parent meets parental obligations must not be overlooked simply because the child has attained the age of majority. The support obligation does not cease; rather it remains unfulfilled. The nonpaying parent still owes the money.

*Gibson,* 561 So.2d at 572. If the court lacks the power to enforce child support orders through contempt, the nonpaying

parent may "hide assets or purposefully elude the court" until the child reaches majority, preferring to defend a civil action to collect the debt rather than risk imprisonment from a contempt proceeding. *Id.* A nonpaying parent should not be able, in this way, not only to put off the obligation to pay, but also to select a less threatening method of enforcement. In sum, we are satisfied that a judgment for child support arrearages is enforceable by a civil contempt order issued—and imposing imprisonment—after the child has reached the age of majority, here twenty-one. See note 5, *supra.* The trial court, therefore, did not err in ruling that it had the authority to hold Wagley in contempt and order his imprisonment.

## IV.

■■■ We review an adjudication of civil contempt for abuse of discretion. *Lopez v. Ysla,* 733 A.2d 330, 335 (D.C.1999). For the trial court to issue a civil contempt order, the movant must make a clear and convincing showing that (1) the alleged contemnor is subject to a court order, and that (2) he or she has failed to comply with that order. *Id.* at 334 n. 12. Furthermore, the court may not impose the sanction of imprisonment unless it finds that the alleged contemnor has the ability to purge the contempt by paying the full amount of accrued, but unpaid, child support. *Smith,* 427 A.2d at 931–32. That said, however, "[w]hen faced with a motion for contempt establishing noncompliance with a support order, the defendant bears the burden of showing an inability to pay or some other excuse for failure to comply." *Id.* at 932. Finally, whether a contemnor has the present ability to pay the debt owed is a factual inquiry and will not be disturbed unless plainly wrong or without evidence to support it. *Langley v. Kornegay,* 620 A.2d 865, 867 (D.C.1993).

Wagley contends, to the contrary, that the trial court erred by entering the contempt judgment against him because Evans failed to prove that he had the present ability to pay the judgment. Wagley's argument is predicated upon an apparent conflict in our case law which we must resolve—and do so in Evans's favor.

### A.

■■■ We begin with *Lundregan v. Lundregan,* 102 U.S.App. D.C. 259, 252 F.2d 823 (1958), a five-paragraph decision of the United States Court of Appeals for the District of Columbia Circuit that reversed a civil contempt ruling because neither the underlying child support order nor the civil contempt order "rest[ed] upon the necessary finding that the husband has failed or refused to maintain his wife and minor children *although able to do so.*" 102 U.S.App. D.C. at 260–61, 252 F.2d at 824–25 (emphasis added). The court limited its decision to a ruling that the trial court had not made a finding on ability to pay; it did not address the threshold question whether the movant or the alleged contemnor had the burden of persuasion on that issue. In dissent, Judge Bastian argued that the trial court orders had been premised appropriately on a finding of ability to pay because the defendant had "made no effort to controvert" the allegations that he was employed and able to pay the amount due. 102 U.S.App. D.C. at 262, 252 F.2d at 826. The fact, however, that the dissent reached its conclusion by reference to the alleged contemnor's failure to carry his burden on inability to pay does not necessarily suggest that the majority had disagreed, implicitly, with Judge Bastian's premise and placed the burden on the movant to prove ability to pay.

Nine years later, in *Scott v. Scott,* 127 U.S.App. D.C. 245, 382 F.2d 461 (1967), the D.C. Circuit, reviewing a decision of

this court—then an "intermediate court" reviewable by certiorari granted by the D.C. Circuit[6]—resolved the issue left open in *Lundregan*. *Scott* confirmed that the burden of persuasion on ability to pay rests on the alleged contemnor, not on the moving party. Specifically, the court affirmed the trial judge's revocation of an earlier order staying execution of the contemnor's commitment to jail for failure to pay court ordered spousal and child support. In doing so, the D.C. Circuit relied on *Truslow v. Truslow*, 212 A.2d 763 (D.C. 1965), a decision of this court that placed the burden on the contemnor "to present to the trial court competent evidence of inability financially to pay the total amount set" by the court's order. *Id.* at 765. In *Truslow*, we elaborated: "the burden is upon him to show by competent evidence a reasonable excuse for nonperformance[,] and when he offers no valid reason for default the trial court has the right to enforce compliance by imprisonment unless the [contemnor] should purge himself of the arrears." *Id.* at 764.[7] Moreover, *Scott* acknowledged that *Truslow* was not

the first decision of this court to place responsibility for proving inability to pay on the alleged contemnor. 127 U.S.App. D.C. at 246, 382 F.2d at 462. Two years earlier we did so twice, in *Johnson v. Johnson*, 195 A.2d 406 (D.C.1963), and in *Suber v. Suber*, 195 A.2d 411 (D.C.1963)— the cases to which the D.C. Circuit was undoubtedly referring.[8]

In our first decision as a Home Rule court reviewing an adjudication for civil contempt in a child support case, *Bolden v. Bolden*, 376 A.2d 430 (D.C.1977), we announced, first, "the general rule with respect to civil contempt ... where noncompliance with a judicial order has been factually established." *Id.* at 433. The burden, we said, "of establishing justification for noncompliance shifts to the alleged contemnor." *Id.* (citing *Johnson*, 195 A.2d at 406; *Truslow*, 212 A.2d 763). Then, in dictum, we recognized what we called "the *Lundregan* exception" for nonpayment of debt cases, such as defaults in child support, requiring, we said, the movant to establish the contemnor's present ability to pay. *Id.* That exception did

6. Before February 1, 1971, the effective date of the District of Columbia Court Reorganization Act of 1970, Pub.L. No. 91–358, the decisions of this court were subject to discretionary review by the U.S. Court of Appeals for the District of Columbia Circuit. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971). To assure orderly development of District of Columbia law after that date, this court, in *M.A.P.*, ruled that "no division of this court will overrule a prior decision of this court or a decision of the United States Court of Appeals [for the District of Columbia Circuit] rendered prior to February 1, 1971, and [] such result can only be accomplished by this court en banc." *Id.* at 312; *accord Gilchrist v. United States*, 954 A.2d 1006, 1013–14 n. 20 (D.C.2008) (citing *M.A.P.*).

7. In *Truslow*, applying the *Lundregan* rule, we reversed an order for commitment to jail because the trial court had not made a finding that the contemnor had the ability to pay the

child support arrearages due. We criticized the father's failure to present evidence of his inability to pay, but, noting record evidence that indicated "he had encountered difficulties in meeting the weekly payments directed by the court," we remanded for the trial court to make the finding required by *Lundregan*, "a necessary prerequisite to enforcement by imprisonment." 212 A.2d at 765.

8. In *Johnson*, we held that the trial court erred in refusing to adjudicate a father for contempt where the father "neither offered to pay the arrearages nor presented evidence upon which the court could predicate a finding that he was justified in failing to comply" with the support order. 195 A.2d at 407. Similarly, in *Suber*, we ruled that the "trial court was justified" in finding contempt because the father had failed to "make some showing" of his inability pay when he did not attend the hearing and no evidence was offered on his behalf. 195 A.2d at 413.

not apply in *Bolden*, however, because the alleged contemnor was not charged with contempt for failure to pay a debt; she was cited instead for refusal to comply with a court order to sell real estate. We therefore applied the general rule that the alleged contemnor had the burden to establish a justification for her noncompliance with the court's order. *Id.*

Four years after *Bolden* was decided, in *Smith v. Smith*, 427 A.2d 928 (D.C.1981), we applied for the first time—as we were required to do[9]—the rule from *Scott* and our own earlier cases, *Truslow, Johnson*, and *Suber.* See notes 7 & 8, *supra.* We held that, in a civil contempt action for nonpayment of child support arrearages, the "defendant bears the burden of showing an inability to pay or some other excuse for failing to comply" with the court order in question. *Smith*, 427 A.2d at 932. *Smith* accordingly demonstrates that the *Bolden* dictum regarding the so-called *Lundregan* exception has never been the law of this jurisdiction; that dictum required no more homage from this court than the D.C. Circuit itself had accorded it in *Scott* (which did not even mention *Lundregan*).

That would seem to have settled the issue, except that a year after *Smith*, in *Hackes v. Hackes*, 446 A.2d 396 (D.C. 1982)—a case concerning alleged civil contempt for failure to pay debts (namely, alimony *pendente lite*, real estate taxes, medical bills, and insurance premiums)—a division of this court, citing *Bolden's* interpretation of *Lundregan*, said that "[t]o imprison for contempt, the movant must also prove the alleged contemnor's ability to pay," adding that "the alleged contemnor can also avoid sanctions ... by a showing of inability to perform." *Id.* at 400. Thus, *Hackes* departed not only from the earlier, binding decision of this court in

*Smith* (as well as those in *Truslow, Johnson*, and *Suber*) but also from the D.C. Circuit's decision in *Scott*, which, as we have seen, had dictated the result in *Smith* pursuant to *M.A.P.*, 285 A.2d at 312. See note 6, *supra.*

After *Hackes*, our case law in child support cases has gone in two directions, one saying that the alleged contemnor bears the burden of showing an inability to pay, *see Lopez*, 733 A.2d at 330, while the other says that the movant must prove the alleged contemnor's ability to pay. *See Li v. Lee*, 817 A.2d 841 (D.C.2003). The foregoing discussion makes clear, however, that the *Scott, Smith, Lopez* line of cases represents the law of this jurisdiction, not our decisions in *Hackes* and *Li.* See *Thomas v. United States*, 731 A.2d 415, 420–21 n. 6 (D.C.1999) ("Where a division of this court fails to adhere to earlier controlling authority, we are required to follow the earlier decision rather than the later one."). It follows, therefore, that because Evans has established that Wagley is subject to a child support order and has failed to honor it, Wagley—in order to avoid the possibility of imprisonment for civil contempt—bears the burden of persuasion on whether, at the time the trial court ruled against him, he had a present inability to pay the $85,918 in arrearages due Evans.

### B.

■ In this case, Evans made a prima facie showing of civil contempt by proffering evidence of the child support order and of Wagley's failure to comply with it in the amount of $85,918 in arrears. In support of its order of imprisonment for civil contempt, moreover, the trial court made the requisite finding that Wagley had the abili-

---

9. See note 6, *supra.*

ty to pay. This finding is supported by the record.

By his own admission, Wagley had been receiving money from a family trust. He has never asserted an inability to pay the debt owed, nor has he ever sought modification of the support order. In short, he has never offered a financial explanation for the arrearages; his communications with Evans have merely said that he considered his obligation satisfied and that he believed she had funds sufficient to satisfy the children's needs without further payment from him. The record, it is true, does not reflect up-to-date information about Wagley's financial condition, but there is enough information, based on undisputed evidence that he has been a man of means, to warrant a finding of ability to pay, especially given his failure to proffer any evidence to the contrary, either in explanations along the way to Evans or more recently to this court. If Wagley had suffered a financial downturn—if the record evidence of ability to pay had become stale—Wagley had the burden to produce evidence to that effect. He failed to do so. Accordingly, the trial court did not err in finding that Wagley had a present ability to pay the $85,918 due, and did not abuse its discretion in holding Wagley in civil contempt of court and ordering him to prison until he purges his contempt in full.[10]

## V.

Wagley's final contentions, that he should have been protected by the defense of laches and that payments from his family trust for the children's education should have been credited against the $85,918 due, also fail.

Laches is not available to Wagley because he has failed to show that the elements of the defense are present here. "A successful defense of laches has two elements: an unreasonable and unexplained delay by one party [here, Evans], and prejudice to the other party [here, Wagley] resulting from the delay." *In re Estate of Reilly*, 933 A.2d 830, 838 (D.C. 2007). Wagley has offered no reason why Evans's delay in filing for contempt until March 2005 was unreasonable or how this delay has prejudiced his defense. The evidence showed that Evans knew, based on the parties' contentious history, that she likely would have trouble collecting the arrearages, and that she therefore acted reasonably in deciding to pursue the amount owed in a single suit—to no apparent disadvantage to Wagley.

The trial court also did not err in declining to credit Wagley with contributions he claims to have made to the children's education through his family trust. Although Wagley asserts that these payments came from funds allocable to him, the trust agreement was not in evidence to justify that assertion. Nor was documentation or any other evidence offered at trial specifying the amount of the payments for which he claims such credit. Without proof of the payments or their source, the trial court could not have calculated a credit toward the purge amount. *See Lopez*, 733 A.2d at 334 (burden on party seeking modification of support order).

*Affirmed.*

---

**10.** This is not a case, such as *Truslow*, where the defendant, like Wagley, had failed to present evidence of his inability to pay, but where we reversed and remanded the imprisonment order nonetheless, because the trial court had not made the requisite finding on that issue and some evidence of record cast doubt on the defendant's ability to make the required payments. See note 7, *supra*.