*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 21-CV-0561

EVELYN KAYODE, APPELLANT,

v.

MIDAS CONSTRUCTION, LLC, *et al.*, APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(2019-CA-007457-B)

(Hon. Fern Flanagan Saddler, Trial Judge)

(Submitted January 30, 2024     Decided April 11, 2024)

*Evelyn Kayode*, pro se.

*E. Andrew Cole* and *Flora K. Lee* were on the brief for appellees.

Before MCLEESE, HOWARD, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: Appellant Evelyn Kayode, proceeding pro se, sued appellees Midas Construction, LLC, and its owner and president, Milos Mihajlovic, in Superior Court, asserting claims for breach of contract, negligence, and violations of the District of Columbia Consumer Protection Procedures Act ("CPPA") arising from Midas Construction's renovation of Ms. Kayode's property in the District. The trial court dismissed the complaint on the ground that a

forum-selection clause in the parties' contract specified Montgomery County, Maryland, as the agreed-upon forum for any disputes related to the contract. That dismissal is not before us.

The trial court also awarded the defendants attorneys' fees and costs in the amount of $14,462.27 pursuant to a contractual provision addressing breach of the contract by the property owner; then, after Ms. Kayode failed to pay, the court held Ms. Kayode in civil contempt, ordered her to immediately comply with its order awarding attorneys' fees, and entered a money judgment against her. That contempt order is the subject of this appeal. Ms. Kayode, again proceeding pro se, argues that the trial court exceeded its discretion in holding her in civil contempt. We agree and reverse the trial court's order holding Ms. Kayode in contempt because we conclude that contempt is an inappropriate remedy for failure to pay an order awarding attorneys' fees and costs.

## I.      Background

### A.      Dismissal of the Complaint and Attorneys' Fees Award

According to the complaint—which is not before us—Ms. Kayode and Midas Construction entered into a contract in 2016 under which Midas Construction agreed to renovate Ms. Kayode's property in Southeast D.C. in exchange for payment in the

amount of $184,550. The complaint alleged that Midas Construction failed to comply with the terms of the contract, failed to secure the appropriate construction permits, and misrepresented its experience and skills, and it asserted claims for breach of contract, negligence, and unlawful trade practices in violation of the CPPA, D.C. Code § 28-3904.

The contract provided that "any action commenced to enforce the terms of this Contract must be brought in the Courts situated in Montgomery County, Maryland," and Midas Construction moved to dismiss the complaint on that ground. After holding a hearing, the trial court granted the motion, concluding that "the parties specifically negotiated the instant forum selection clause and have evidenced a clear intention to litigate any breach or threatened breach of the subject contract in the courts of Montgomery County, Maryland," and that Ms. Kayode had "failed to provide any compelling argument as to why enforcement of the parties' forum selection clause would be unreasonable."

As part of its motion to dismiss, Midas Construction also sought attorneys' fees and costs pursuant to a provision of the contract stating that, in the event of a breach by the property owner (Ms. Kayode) and a resulting legal dispute, Midas Construction would be entitled to "all costs and reasonable attorney's fees." Midas Construction argued that Ms. Kayode breached the contract by filing suit in the

District of Columbia rather than in Maryland. The trial court, in an order also not before us, granted Midas Construction attorneys' fees and costs totaling $14,462.27.

### B. Civil Contempt

Three months after the trial court ordered Ms. Kayode to pay Midas Construction's attorneys' fees and costs, Midas Construction moved for an order to show cause why Ms. Kayode (who by then had retained counsel) should not be held in constructive civil contempt,[1] or, in the alternative, for the court to reduce the award to a judgment, asserting that Ms. Kayode had not paid the fees and costs and that she and her counsel were not responding to Midas's communications and demands. The trial court issued an order to show cause and held two hearings.

After the second hearing, with Ms. Kayode not having paid the attorneys' fees and costs and the parties having failed to resolve the issue on their own, the trial court held Ms. Kayode in civil contempt, stating that the "award of fees was clear and unambiguous" and that Ms. Kayode had "not paid the attorneys['] fees awarded to Defendants by this Court." The court added that Ms. Kayode had "not sufficiently demonstrated that there has been any substantial performance, or that [she was]

---

[1] "If the conduct constituting the contempt occurs out of the presence of the court, it may be further characterized as 'indirect' or 'constructive' contempt." *Thompson v. Thompson*, 559 A.2d 311, 314 n.4 (D.C. 1989).

unable to pay the amount awarded." The court thus held Ms. Kayode in civil contempt, ordered her to "immediately come into compliance" with its order awarding attorneys' fees and costs, and entered a judgment against her in the amount of $14,462.27. At the same time, the court "encourage[d] the parties to continue to try and resolve this matter, and to come to a reasonable and feasible compromise, or resolution of the matter concerning payment of fees and costs." And the court denied Midas's request for additional attorneys' fees and costs associated with legal work following the court's dismissal of Ms. Kayode's complaint, stating that that request "goes beyond compensation for losses sustained."

This appeal followed.

## II. Analysis

Before we may proceed to the merits, "[w]e [must] first determine whether we have jurisdiction to entertain [this] appeal[ ]." *Deloatch v. Sessoms-Deloatch*, 229 A.3d 486, 488 (D.C. 2020). We conclude that we possess appellate jurisdiction and, on the merits, we reverse the trial court's contempt order.

## A. Jurisdiction

"This court has consistently held that 'where the trial court has imposed no remedial or coercive sanction conditioned upon compliance with [a] contempt order,

an adjudication of civil contempt lacks the certainty, specificity, and finality essential for judicial review.'" *Crane v. Crane*, 614 A.2d 935, 939 (D.C. 1992) (per curiam) (quoting *D.D. v. M.T.*, 550 A.2d 37, 42-43 (D.C. 1988)). "[T]he embarrassment and unpleasantness of having been found in contempt, without more, will not create a justiciable controversy, and . . . an individual so adjudicated does not have the right to appeal simply to clear his or her name." *D.D.*, 550 A.2d at 43; *see Ashcraft v. Ashcraft*, 318 A.2d 284, 285 (D.C. 1974) ("We notice also that the trial court imposed no remedial or coercive sanction conditioned upon . . . obedience to the contempt order. Consequently, the order lacks the certainty, specificity and finality essential for judicial review."). Accordingly, we must determine whether the contempt order imposed either a coercive or a remedial sanction.

In our view, the contempt order imposed a remedial sanction upon Ms. Kayode. The contempt order did three things. It (1) found Ms. Kayode in contempt of the June 16, 2020, order awarding attorneys' fees, (2) entered a judgment against Ms. Kayode in the amount of $14,462.27, and (3) ordered Ms. Kayode to "immediately come into compliance with" the court's order. None of these are coercive contempt sanctions because they are not conditional—that is, they do not "afford[ ]" Ms. Kayode "an opportunity to purge" herself of the contempt. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) (using "a per diem fine imposed for each day a contemnor fails to comply

with an affirmative court order" as a paradigmatic example of a coercive civil contempt sanction in the form of a fine); *see D.D.*, 550 A.2d at 43 (conditional imprisonment or conditional daily fine "are probably the most familiar sanctions in civil contempt proceedings designed to coerce compliance with the mandate of the court"). But the court's order that Ms. Kayode "come into immediate compliance" with its order and pay the $14,462.27 constituted a remedial sanction because it sought to compensate Midas Construction "for losses sustained" in the course of the litigation. *Int'l Union*, 512 U.S. at 829 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)); *see Giles v. Crawford Edgewood Trenton Terrace*, 911 A.2d 1223, 1224 (D.C. 2006) ("We likewise have recognized that compensation is an appropriate remedial purpose of civil contempt.").

It is true that the sanctions imposed by the contempt order are quite similar to those already imposed in the initial attorneys' fee award, which also totaled $14,462.27. If the contempt order amounted to no more than a reiteration of the prior award, we would likely lack appellate jurisdiction to review it because Ms. Kayode would have suffered no new injury. *Cf. Auger v. D.C. Bd. of Appeals & Rev.*, 477 A.2d 196, 207 (D.C. 1984) (deeming an appeal moot because it sought review of a "redundant" order).

The contempt order, however, broke new remedial ground. The initial attorneys' fee award created a judgment that Midas Construction could have executed on after thirty days. *See* Super. Ct. Civ. R. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."); *id.* R. 58(a)(3) (for purposes of entering judgment, "a separate document is not required for an order disposing of a motion . . . for attorney[s'] fees"); *id.* R. 62(a) ("execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise"); *see also* D.C. Code § 15-301 (for purposes of the statutory provisions relating to execution on a judgment, "'judgment' includes an unconditional decree for the payment of money"). The contempt order's command that Ms. Kayode "immediately come into compliance with this Court's Order," however, did something different. The command to comply with the order immediately was a personal order compelling Ms. Kayode to take a specific act— namely, pay the attorneys' fee award. As a result, the order fell under D.C. Super. Ct. Civ. R. 70. If Ms. Kayode were to violate that court order, she could expose herself to a panoply of further contempt sanctions, such as conditional imprisonment or fines. *See* D.C. Super. Ct. Civ. R. 70 (allowing a court to "hold the disobedient party in contempt" if they fail to "perform any . . . specific act" ordered by the court). That was not the case for the initial award of attorneys' fees. That award constituted a money judgment, which is governed instead by D.C. Super. Ct. Civ. R. 69. Rule 69

does not authorize contempt as a sanction for noncompliance but rather instructs judgment holders to enforce their judgment "by a writ of execution, unless the court directs otherwise." *Id.* R. 69(a); *see also* D.C. Code § 15-307 ("A writ of fieri facias issued upon a judgment of . . . the Superior Court of the District of Columbia is a lien from the time of its delivery to the marshal upon all the goods and chattels of the judgment defendant . . . ."). A "money judgment," unlike a specific order by a court to act, is "not a personal order to the defendant that is enforceable by contempt." 12 Richard L. Marcus, *Federal Practice and Procedure* § 3011 (3d ed.).

Because the court's directive requiring immediate compliance as part of the contempt order exposed Ms. Kayode to the possibility of future sanctions that were unavailable in the absence of contempt, it constituted a contempt sanction sufficient to create a justiciable controversy.

## B. Merits

Having assured ourselves of our jurisdiction, we now proceed to the merits. We hold that the trial court's contempt order exceeded its discretion.

"Superior Court judges have express authority to 'punish for disobedience of an order or for contempt committed in the presence of the court.'" *Eisenberg v. Swain*, 233 A.3d 13, 22 (D.C. 2020) (quoting D.C. Code § 11-944(a) (2012 Repl.)).

"In addition to its statutorily derived authority, the court retains a well-established power to punish for contempt that is 'inherent in the nature and constitution of a court . . . arising from the need to enforce compliance with the administration of the law.'" *Id.* (omission in original) (quoting *Brooks v. United States*, 686 A.2d 214, 220 (D.C. 1996)). "The decision whether to hold a party in civil contempt is confided to the sound discretion of the trial judge[ ] and will be reversed on appeal only upon a clear showing of abuse of discretion." *Id.* (citing *In re T.S.*, 829 A.2d 937, 940 (D.C. 2003)); *see Wagley v. Evans*, 971 A.2d 205, 210 (D.C. 2009) ("We review an adjudication of civil contempt for abuse of discretion.").

Contempt as a remedy for Ms. Kayode's failure to pay the prior award of attorneys' fees and costs was beyond the trial court's discretion here. As we have already explained, the award of attorneys' fees and costs constituted a money judgment. *See* Super. Ct. Civ. R. 54(a); *id.* 58(a)(3). And money judgements should be enforced by seeking a writ of execution or *fieri facias*. *See id.* R. 69(a); D.C. Code § 15-307. Indeed, as we held in *In re Estate of Bonham*, "absent statutory authority or exceptional circumstances, contempt in general, and the imposition of imprisonment in particular, are not appropriate means to enforce a money judgment or an award of counsel fees and costs." 817 A.2d 192, 195 (D.C. 2003).

To be sure, our opinion in *Bonham* discussed "the ancient but now largely discredited practice of imprisonment for debt," *id.* at 194, and we focused primarily on D.C. Code § 15-320(c), which provided (and still provides) that where a decree only directs the payment of money, the defendant may not be imprisoned except where otherwise permitted, *id.* But we spoke more broadly of the principle that, where other adequate remedies, such as execution on the judgment, are available, contempt "in general" is not an appropriate means to enforce a money judgment. *Id.* at 195; *see id.* at 196 (the holder of the judgment for attorneys' fees and costs failed to "point to any exceptional circumstances or established principles that would allow him to secure payment through contempt rather than by resort to a writ of execution or other comparable remedies" (quotations omitted)); *see also CFTC v. Escobio*, 946 F.3d 1242, 1251-52 (11th Cir. 2020) ("Injunctions, and other coercive equitable remedies, have historically been enforceable via the court's civil contempt powers. Money judgments, on the other hand, are enforceable 'by a writ of execution, unless the court directs otherwise.'" (quoting Fed. R. Civ. P. 69)). We are aware of no special circumstances in this case that justify a departure from the ordinary course and warrant the imposition of contempt.

The trial court permitted Midas Construction to enforce its money judgment through contempt rather than the traditional process of obtaining a writ of execution or *fieri facias*. In doing so, it exposed Ms. Kayode to the risk of additional future

penalties such as fines or even conditional imprisonment. Guided by our prior decision in *Bonham*, we hold that the use of contempt as a remedy for the nonpayment of a money judgment in this case exceeded the trial court's discretion. Our holding has no bearing on the pre-existing order awarding Midas attorneys' fees and costs.

### III.     Conclusion

For the foregoing reasons, we reverse the trial court's order holding Ms. Kayode in civil contempt.

*So ordered.*