Robert Ted **PARKER,** Appellant,

v.

**K & L GATES, LLP, et al.,** Appellees.

No. 11–CV–1578.

District of Columbia Court of Appeals.

Argued Jan. 8, 2013.
Decided Sept. 19, 2013.

---

Robert Ted Parker, Washington, DC, pro se.

Mark W. Foster, with whom Michael R. Smith, Washington, DC, and Susan Dudley Klaff were on the brief, for appellees.

Before Easterly and McLeese, Associate Judges, and Ferren, Senior Judge.

McLEESE, Associate Judge:

Robert Parker filed suit in California state court against several defendants, including his former employer, law firm K & L Gates, LLP, and two of its partners. Invoking arbitration and forum-selection clauses in the firm's partnership agreement, the K & L Gates defendants moved in the District of Columbia Superior Court to compel arbitration. The Superior Court ordered the parties to arbitrate their dispute, and Mr. Parker appealed. We affirm.

## I.

Kirkpatrick & Lockhart Nicholson Graham, LLP and Preston Gates & Ellis, LLP merged in 2006 to form K & L Gates. The new firm required all former partners of Preston Gates & Ellis who wished to become partners at K & L Gates to sign a supplement to the firm's partnership agreement. Mr. Parker had been a partner at Preston Gates & Ellis, and he chose to join K & L Gates as a partner. Mr. Parker signed the supplement.

The supplement states that new partners agree to be bound by K & L Gates's partnership agreement "as amended." One of the amendments to the partnership agreement contains an arbitration clause. That amendment had been added to the partnership agreement before Mr. Parker signed the agreement.

A dispute later arose between Mr. Parker and K & L Gates. As a result of the dispute, Mr. Parker stopped working at K

& L Gates and filed a lawsuit in California state court against K & L Gates, two partners of K & L Gates, and other parties. Mr. Parker's complaint alleges breach of contract, breach of fiduciary duty, wrongful termination, age discrimination, and other claims.

The K & L Gates defendants (referred to hereinafter as "K & L Gates") filed a motion to compel arbitration in Superior Court. The Superior Court directed the parties to proceed to arbitration. Mr. Parker filed a motion to alter or amend the judgment, pursuant to Super. Ct. Civ. R. 59(e). The trial court denied the motion, and this appeal followed.[1]

## II.

At the outset, we address two jurisdictional issues: the timeliness of the appeal and the finality of the order on appeal. We conclude that the appeal was timely and that the order on review was final.

### A.

■ We first address whether Mr. Parker's appeal was timely. The answer to that question depends on whether Mr. Parker's post-judgment motion to alter or amend pursuant to Super. Ct. Civ. R. 59(e) was timely and therefore tolled the time to appeal. We conclude that Mr. Parker's Rule 59(e) motion was timely, and that the appeal was timely as well.

The trial court's order compelling arbitration was issued on September 6, 2011. The order was served both electronically and by mail. Mr. Parker submitted his Rule 59(e) motion to alter or amend electronically eleven days later, on September 21, 2011, and received an electronic confirmation. Although Mr. Parker's motion was subsequently rejected but then apparently accepted and docketed, we conclude

that Mr. Parker's motion is properly understood to have been filed on September 21, 2011, the date that the electronic confirmation initially showed it as having been filed. Super. Ct. Civ. R. 5(e)(2)(A) ("Filing by electronic means is complete upon transmission, unless the party making the transmission learns that the attempted transmission was undelivered or undeliverable.").

Mr. Parker's Rule 59(e) motion therefore was timely. Allowing ten days for filing, adding three days because the order compelling arbitration was not served by hand, and excluding weekends and holidays, Mr. Parker could have timely filed his Rule 59(e) motion as late as September 23, 2011. *See* Super. Ct. Civ. R. 6(a), 6(e), 59(e); *Wallace v. Warehouse Emps. Union # 730*, 482 A.2d 801, 806–10 (D.C.1984) (three-day extension provided by Rule 6(e) applies to Rule 59(e) motions; three-day period under Rule 6(e) and ten-day period under Rule 59(e) are calculated separately and exclude weekends and holidays). Finally, because Mr. Parker filed the notice of appeal on December 5, 2011, thirteen days after the trial court denied the timely Rule 59(e) motion, the notice of appeal was also timely. *See* D.C.App. R. 4(a)(1); *Frain v. District of Columbia*, 572 A.2d 447, 450 (D.C.1990).

### B.

■ K & L Gates filed a motion to dismiss Mr. Parker's appeal as having been taken from a non-final and non-appealable order. A motions division of this court denied the motion to dismiss, but directed the parties to address in their briefs "whether this court has jurisdiction over an appeal from a trial court order compelling arbitration." K & L Gates la-

---

1. K & L Gates represents that the California court stayed the proceedings in that court pending the resolution of any appeals in this court related to the Superior Court's order compelling arbitration.

ter changed its position, and the parties now agree that the order compelling arbitration was an appealable order. We nonetheless must independently verify that we have jurisdiction. *See Murphy v. McCloud,* 650 A.2d 202, 203 n. 4 (D.C. 1994).

The Council of the District of Columbia adopted a version of the Revised Uniform Arbitration Act ("RUAA") in 2007.[2] *See* Arbitration Act of 2007, D.C. Law 17–111, 55 D.C.Reg. 1847 (Feb. 29, 2008); *Menna v. Plymouth Rock Assurance Corp.,* 987 A.2d 458, 462–63 (D.C.2010). As enacted, the RUAA provides that orders compelling arbitration are appealable. D.C.Code § 16–4427(a)(1) (2012 Repl.) ("An appeal may be taken from ... [a]n order ... granting a motion to compel arbitration."). The Home Rule Act, however, prohibits the Council from legislating "with respect to any provision of Title 11." D.C.Code § 1–206.02(a)(4) (2012 Repl.); Pub.L. No. 93–198, 87 Stat. 774, 813 (1973). Among other things, Title 11 defines the scope of this court's jurisdiction over appeals from Superior Court. *See* D.C.Code § 11–721(a) (2012 Repl.) (authorizing this court to review final orders and judgments of Superior Court). If the RUAA conferred jurisdiction to review orders that otherwise would not be appealable under Title 11, a potential issue would arise under the Home Rule Act. This court has already held, however, that orders compelling arbitration in the circumstances of this case are final and appealable under Title 11. *Carter v. Cathedral Ave. Coop., Inc.,* 658 A.2d 1047, 1051 n. 5 (D.C.1995) (per curiam); *see also Green Tree Fin. Corp.–Ala. v. Randolph,* 531 U.S. 79, 86–89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (holding that order compelling arbitration and dismissing other claims was final because it "plainly disposed of the entire case on the merits and left no part of it pending before the court").[3] Because such orders are final and appealable under both Title 11 and the RUAA, we need not address the Home Rule Act issue that would arise in the event of a conflict between Title 11 and the RUAA. Thus, under this court's decision in *Carter,* the order compelling arbitration in this case is final and appealable.[4]

## III.

■ We review de novo the trial court's determination that the arbitration and forum-selection clauses at issue were valid and enforceable. *See Affordable Elegance Travel, Inc. v. Worldspan, L.P.,* 774 A.2d

2. By its terms, the RUAA now "governs an agreement to arbitrate whenever made." D.C.Code § 16–4403(e) (2012 Repl.). The parties, moreover, do not presently dispute the RUAA's applicability to their contract.

3. Mr. Parker and K & L Gates both asserted at oral argument that the appealability of the order compelling arbitration in this case was resolved by the Supreme Court's decision in *Green Tree.* Because we conclude that the order compelling arbitration in this case was final and appealable as a matter of local law, we need not address the question whether federal law would preempt contrary local law on that point. We also note that *Carter,* like this case, involved a motion to compel arbitration that was filed and decided in an independent proceeding. *Id.* at 1051 n. 5. *See* *generally Green Tree,* 531 U.S. at 87, 121 S.Ct. 513 (defining independent proceedings as "actions in which a request to order arbitration is the sole issue before the court"). Under federal law, orders compelling arbitration can be final even outside the context of independent proceedings. *Id.* at 86–87, 121 S.Ct. 513. Because this case arises in the context of an independent proceeding, we have no occasion to consider the appealability of orders compelling arbitration in other contexts.

4. In separate concurrences, the members of the division explain their reasons for concluding that the court is bound by *Carter* on this issue and not by the court's earlier decision in *American Fed'n of Gov't Emps., AFL–CIO v. Koczak,* 439 A.2d 478, 480 (D.C.1981).

320, 327 n. 8 (D.C.2001) ("Whether a contract is enforceable is a legal issue that this court considers *de novo.*"); *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir.2001) ("We review *de novo* a district court's order denying a petition to compel arbitration, including its interpretation of the validity and scope of the arbitration clause."). We uphold the trial court's ruling.

■ The supplement to the partnership agreement binds its signatories to K & L Gates's partnership agreement "as amended." One of the amendments, added before Mr. Parker signed the partnership agreement, contains the arbitration and forum-selection clauses. Therefore, by signing the supplement, Mr. Parker assented to those provisions. *Davis v. Winfield,* 664 A.2d 836, 838 (D.C.1995) ("Mutual assent to a contract . . . is most clearly evidenced by the terms of a signed written agreement. . . .").[5] Mr. Parker has not asserted that he was ever denied an opportunity to review the full partnership agreement; rather, Mr. Parker testified that after his separation from K & L Gates he requested a copy of the full partnership agreement and K & L Gates gave him a copy. Mr. Parker thus had an opportunity to read the arbitration and forum-selection clauses, and he received adequate notice of them. "The general rule is that absent fraud or mistake, one who signs a contract is bound by a contract which he has an opportunity to read whether he does so or not." *Nickens v. Labor Agency,* 600 A.2d 813, 817 n. 2 (D.C.1991).[6] Accordingly, Mr. Parker is bound by those terms. *See Brown v. Dorsey & Whitney, LLP.,* 267 F.Supp.2d 61, 80–81 (D.D.C.2003) (applying District of Columbia law, finding agreement to arbitrate enforceable where law firm's dispute-resolution policy contained an arbitration clause and where "plaintiff was presented with an employment agreement which called for her to agree to be bound by the law firm's dispute resolution policy. Not knowing what the exact policy was, and without requesting a copy of the policy even though she was told she could have access to it, plain-

---

**5.** The parties disagree about which substantive body of law governs their dispute. The only specific conflict of law that they assert, however, relates to Mr. Parker's claim that the trial court should have stayed the order to compel arbitration. Accordingly, we apply District of Columbia law to all other issues. *See, e.g., C & E Servs., Inc. v. Ashland, Inc.,* 498 F.Supp.2d 242, 255 n. 5 (D.D.C.2007) (finding it unnecessary to determine which state's substantive law governed and applying District of Columbia law, because plaintiff contended and defendant did not dispute that there was no substantive difference between D.C. law and Virginia law); *cf. International Bus. Machs. Corp. v. Bajorek,* 191 F.3d 1033, 1037 (9th Cir.1999) ("Though the parties disagree on whether to apply California or New York choice of law principles, the briefs set out no difference between them, so we need not decide, and can proceed to application of the principles in Restatement (Second) Conflict of Laws section 187."); *Duncan v. G.E.W., Inc.,* 526 A.2d 1358, 1363 (D.C.1987) ("because it would make no difference which jurisdiction's law is deemed controlling, we need not decide the choice-of-law issue in this case").

**6.** Because Mr. Parker consented to the District of Columbia as a forum, his objection to personal jurisdiction is not well founded. Although Mr. Parker appears to contend that constitutional due-process analysis must still be performed even where a party consents to jurisdiction, the law is to the contrary. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703–04, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (requirement of personal jurisdiction can be waived; for example, "parties to a contract may agree in advance to submit to the jurisdiction of a given court") (quoting *National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)); *see generally District of Columbia Metro. Police Dep't v. Fraternal Order of Police,* 997 A.2d 65, 76 (D.C.2010) ("An objection to the court's personal jurisdiction is waivable. . . .").

tiff signed the Employment Agreement."); *cf. Forrest v. Verizon Commc'ns, Inc.,* 805 A.2d 1007, 1010 (D.C.2002) (enforcing forum-selection clause where clause had been reasonably communicated to objecting party). Moreover, the trial court found that Mr. Parker is a seasoned attorney, which further supports holding Mr. Parker to his agreement. *See Brown,* 267 F.Supp.2d at 73–74.

▮ Mr. Parker also argues on appeal that the trial court erred by failing to consider evidence that K & L Gates committed fraud at the time of contract formation. Because Mr. Parker alleged fraud for the first time in his Rule 59(e) motion, he has forfeited that defense. *See, e.g., Pacific Ins. Co. v. American Nat'l Fire Ins. Co.,* 148 F.3d 396, 404 (4th Cir.1998) (upholding trial court's determination that party could not assert new legal theory in opposition to opponent's Rule 59(e) motion and describing "overwhelming authority that a party should not be permitted to raise new arguments or legal theories of liability on a motion to alter or amend the judgment under Rule 59(e)"); *cf. Nuyen v. Luna,* 884 A.2d 650, 655 (D.C.2005) (Rule 59(e) motion "does not provide a vehicle for a party to undo its own procedural failures") (quoting *United States v. $23,000 in U.S. Currency,* 356 F.3d 157, 165 n. 9 (1st Cir.2004)). Therefore, even though the trial court did not explicitly address Mr. Parker's allegations of fraud in its order denying Mr. Parker's Rule 59(e) motion, that is not a basis for reversal.[7]

▮ Mr. Parker further asserts that enforcement of the forum-selection clause is unreasonable under the circumstances of this case.[8] To establish unreasonableness, Mr. Parker must show either (1) that his consent was obtained through fraud; (2) that requiring Mr. Parker to arbitrate and to defend the motion to compel in the District of Columbia would be so unfair as to deprive him of a remedy or deprive him of his day in court; or (3) that enforcement of the clause would violate a strong public policy of the state where the action was filed. *Forrest,* 805 A.2d at 1011–12.

Mr. Parker fails to make any of these three showings. First, we have already explained that Mr. Parker forfeited any claim of fraud. Second, although Mr. Parker asserts that arbitrating in the District of Columbia would be inconvenient, because he and most of the potential witnesses live in California, he makes no effort to explain why that inconvenience would prevent him from obtaining a remedy or effectively deprive him of his day in court. *See M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ("it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical

---

**7.** We note that Mr. Parker's allegations of fraud were cursory and inadequate to raise the issue; Mr. Parker failed to state or analyze the elements of fraud, and his main allegations were that K & L Gates engaged in forum-shopping, which is implausible for reasons stated *infra* at n. 9, and that he was not given a full copy of the Partnership Agreement until he requested it. Because we conclude that the issue of fraud was forfeited, we have no occasion to address K & L Gates's alternative argument that the arbitrator, not the trial court, should have addressed Mr. Parker's fraud allegation in the first instance.

**8.** Mr. Parker also alleges that K & L Gates selected the District of Columbia as the forum solely because the RUAA allows a motion to compel arbitration to be filed in Superior Court, even where the motion pertains to an action that is already pending in a different court. We find this allegation of forum shopping implausible. The initial effective date of the forum-selection clause was December 14, 2006, but the RUAA was not enacted until December 31, 2007. 55 D.C.Reg. at 1863.

purposes be deprived of his day in court"); *Yazdani v. Access ATM,* 941 A.2d 429, 431 n. 2 (D.C.2008) (granting challenges to forum-selection clauses based solely on inconvenience of traveling to remote location would "invalidate most such clauses"). Third, Mr. Parker does not assert that enforcing the forum-selection clause in this case would violate a strong public policy of the District of Columbia, and we see no reason why it would.[9] *Cf., e.g., Friend v. Friend,* 609 A.2d 1137, 1139 (D.C.1992) (District of Columbia has a "well-established preference for arbitration when the parties have expressed a willingness to arbitrate").

In sum, we conclude that the arbitration and forum-selection clauses are valid and enforceable against Mr. Parker.

## IV.

### A.

■ The trial court determined that all of Mr. Parker's claims come within the scope of the arbitration clause.[10] We review this determination de novo, *Giron v. Dodds,* 35 A.3d 433, 437 (D.C.2012), and we uphold the trial court's ruling. Upon a finding of a valid agreement to arbitrate, a presumption arises in favor of arbitrability. *Lopata v. Coyne,* 735 A.2d 931, 936 (D.C.

1999). To determine whether a particular claim is covered by an arbitration clause, we "inquire merely whether the arbitration clause is susceptible of an interpretation that covers the dispute." *Haynes v. Kuder,* 591 A.2d 1286, 1289 (D.C.1991) (internal quotation marks omitted).

■ Mr. Parker asserts that the arbitration clause covers only his contractual claims, not his tort and statutory claims. The broad language of the clause, however, covers "[a]ny controversy, claim or dispute ... directly or indirectly concerning this Agreement or the breach hereof or the subject matter hereof...."[11] The clause does not limit coverage to contractual claims or exclude tort and statutory claims; rather, it explicitly covers any claim concerning the subject matter of the partnership agreement. Accordingly, we conclude that any claim—whether sounding in contract, tort, or statute—that arises out of Mr. Parker's employment relationship with K & L Gates is covered by the arbitration clause. *See Woodland Ltd. P'ship v. Wulff,* 868 A.2d 860, 865 (D.C.2005) (question whether defendants had waived right to compel arbitration was itself arbitrable; "the parties' broad agreement to arbitrate 'any dispute arising under or related to' the ... partnership

---

9. Mr. Parker argues that the relevant question is whether enforcement of the clause would violate a strong public policy of California. The law is to the contrary: the relevant question is whether enforcement of the clause would violate a strong public policy of the District of Columbia. *See, e.g., Forrest,* 805 A.2d at 1012 n. 11 ("Appellant has not demonstrated to us a statutory-based comparably strong *District* public policy against the enforcement of a Virginia forum selection clause.") (emphasis added).

10. We need not address whether the parties agreed to arbitrate questions related to the scope of the arbitration clause. Although the parties disputed this issue in the trial court, they no longer dispute it on appeal.

11. The full text of the relevant portion of the arbitration clause states:

> Any controversy, claim or dispute between or among the Partners, including but not limited to any former partners, and any controversy, claim or dispute between or among one or more Partners, including but not limited to any former partners, and the Partnership, directly or indirectly concerning this Agreement or the breach hereof or the subject matter hereof, including questions concerning the scope and applicability of this Section 12.01, shall be finally settled by a single arbitrator....

agreement dictates that this question incidental to their dispute ... under that agreement be submitted to the arbitrator"); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 617, 624–28, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (finding that statutory antitrust claims were covered by agreement that "[a]ll disputes, controversies or differences which may arise between [contracting parties] out of or in relation to Articles I–B through V of this Agreement or for the breach thereof, shall be finally settled by arbitration ..."); *Wolff v. Westwood Mgmt., LLC,* 503 F.Supp.2d 274, 281–83 (D.D.C.2007) (agreement to arbitrate "any dispute which may arise during construction and management of the office building complex" covers claim of breach of fiduciary duty and "derivative claims").

Mr. Parker's employment relationship with K & L Gates is part of the "subject matter" of the partnership agreement, and all of Mr. Parker's contractual and non-contractual claims concern that relationship. In fact, Mr. Parker himself describes his claims as "arising from termination of his K & L Gates partnership." We therefore conclude that the trial court did not err in interpreting the arbitration clause to apply to tort and statutory claims as well as contract claims.

### B.

■ Finally, Mr. Parker asserts that his claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), Pub.L. No. 90–202, 81 Stat. 602 (1967) (codified as amended at 29 U.S.C. § 621 et seq. (2011)), is not arbitrable, because ADEA claims are not explicitly covered by the arbitration clause. Mr. Parker relies, however, on cases that apply only to collectively bargained contracts. *See Wright v. Universal Mar. Serv. Corp.,* 525 U.S. 70, 79–80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (intent "must be clear and unmistakable" for court to find that union-negotiated contract waives "employees' statutory right to a judicial forum for claims of employment discrimination"); *14 Penn Plaza LLC .v. Pyett,* 556 U.S. 247, 251, 258–59, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009) (compelling union member to arbitrate ADEA claims because collectively bargained contract "clearly and unmistakably" required arbitration).

■ The general rule is that federal statutory claims can be submitted to arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA. Indeed, in recent years we have held enforceable arbitration agreements relating to claims arising under the Sherman Act, ... the Securities Exchange Act of 1934, ... the Racketeer Influenced and Corrupt Organizations Act, and ... the Securities Act of 1933.") (citations omitted); *Cole v. Burns Int'l Sec. Servs.,* 323 U.S.App. D.C. 133, 146, 105 F.3d 1465, 1478 (1997) ("the Supreme Court now has made clear that, as a general rule, statutory claims are fully subject to binding arbitration, at least outside of the context of collective bargaining"). An individual's agreement to arbitrate such claims need not be stated "clearly and unmistakably." *See Wright,* 525 U.S. at 80–81, 119 S.Ct. 391 ("*Gilmer* involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees—and hence the 'clear and unmistakable' standard was not applicable."); *American Heritage Life Ins. Co. v. Orr,* 294 F.3d 702, 711 (5th Cir.2002) ("[T]he Supreme Court limited its holding in *Wright* to the context of a *collective bargaining agreement,* not to an *individual's* waiver of his own rights—a situation in which the 'clear and unmistakable' standard is not applicable. Thus, outside the area of collective bargaining, in which a third party (the union)

seeks to waive contractually the rights of an individual member (the employee), there is no requirement that an arbitration provision must clearly and unmistakably express the waiver of an individual's rights.") (citations omitted); *Williams v. Imhoff*, 203 F.3d 758, 763 (10th Cir.2000) ("Although the Court [in *Wright*] did not discuss in detail the standard applicable to agreements entered into by individual employees, it left little doubt that the 'clear and unmistakable' standard was inapplicable to such agreements."). The trial court therefore correctly concluded that Mr. Parker agreed to arbitrate his ADEA claims.

## V.

■■■ The parties raise one potential conflict-of-law issue: whether, under § 1281.2(c) of the California Code of Civil Procedure, the trial court should have stayed arbitration proceedings pending the outcome of the litigation in California state court.[12] Mr. Parker contends that the substantive law of California governs this dispute, and that the trial court therefore should have issued a stay pursuant to § 1281.2(c). K & L Gates argues that the

trial court was correct to apply District of Columbia law. The trial court applied District of Columbia law, but did not discuss which body of law should be applied. We generally review choice-of-law determinations de novo. *See Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31, 40 (D.C. 1989).

■■■ The forum state's choice-of-law rules apply to choice-of-law questions, unless the contract explicitly provides otherwise.[13] *See Adolph Coors Co. v. Truck Ins. Exch.*, 960 A.2d 617, 620 (D.C.2008) (applying District of Columbia choice-of-law rules); *Restatement (Second) of Conflict of Laws* § 186, cmt. b, at 559 (1971) ("Values of certainty of result and of ease of application dictate that the forum should ... not concern itself with the complications that might arise if the forum were to apply [the selected] state's choice-of-law rules."). Accordingly, we apply District of Columbia law to resolve whether § 1281.2(c) is applicable to this dispute.

### A.

■■■ Under District of Columbia choice-of-law rules, procedures of the forum normally apply.[14] *See Huang v. D'Al-*

---

12. The relevant provision states:

> If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration ·and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding.
>
> Cal.Civ.Proc.Code § 1281.2(c) (West through 2013 Reg. Sess.).

13. Mr. Parker appears to agree that District of Columbia choice-of-law rules apply.

14. In some circumstances, however, a foreign jurisdiction may enforce procedural provisions of a different jurisdiction if a contract explicitly provides that another set of procedures shall govern. *See, e.g., Conteh v. Allstate Ins. Co.*, 782 A.2d 748, 752 (D.C.2001) ("Since the Virginia statute and its attendant obligations were expressly incorporated into the insurance policy, we need not address appellant's characterization of section 38.2–2206 as creating a merely procedural duty."); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 66, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) ("if the parties intend that state procedure shall govern, federal courts must enforce that understanding"). Neither of the parties here argues that the partnership

*bora,* 644 A.2d 1, 4 (D.C.1994) ("Under customary choice of law principles, the laws of the forum ... apply to matters of procedure....") (internal quotation marks omitted; initial ellipses in *Huang* ). *See generally Restatement (Second) of Conflict of Laws,* Introductory Note to Ch. 6, at 350 (1971) ("Commonly, it is said that the forum will apply its own local law to matters of procedure and the otherwise applicable law to matters of substance."). We conclude for several reasons that § 1281.2(c) is procedural, not substantive.

First, courts have repeatedly treated § 1281.2 as procedural. *See, e.g., Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (concluding that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules" and that § 1281.2(c) was thus not preempted by procedural rules of FAA); *Security Ins. Co. of Hartford v. TIG Ins. Co.,* 360 F.3d 322, 326 (2d Cir.2004) ("*Volt* controls the present case. It compellingly tells us that section 1281.2(c)(4) is a procedural rule for arbitration and therefore is not preempted by the FAA."); *Cronus Invs., Inc. v. Concierge Servs.,* 35 Cal.4th 376, 25 Cal.Rptr.3d 540, 107 P.3d 217, 221 (2005) (describing § 1281.2(c) as part of "California procedural law"). Mr. Parker cites no case—and we are aware of none—describing § 1281.2(c) as substantive.

Second, treating § 1281.2(c) as procedural is consistent with the line between procedure and substance drawn in our previous choice-of-law cases. *See Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Sci., Inc.,* 858 A.2d 457, 463 (D.C. 2004) (applying time limits and substantive requirements of District of Columbia Superior Court Civil Rule 60(b) as part of forum procedural law, where Maryland substantive law governed and appellant

had argued that Maryland Arbitration Act time limits should apply); *Fowler v. A & A Co.,* 262 A.2d 344, 347–48 (D.C.1970) (applying District of Columbia statute of limitations and Maryland substantive law; "the laws of the forum always apply to matters of procedure"); *Miller & Long Co. v. Shaw,* 204 A.2d 697, 699 (D.C.1964) (treating as substantive for choice-of-law purposes (1) applicable standard of conduct, and (2) whether plaintiff was licensee or invitee when he entered defendant's property); *Hardy v. Hardy,* 197 A.2d 923, 924–25 (D.C.1964) (whether evidence is sufficient to reach jury is procedural issue; standard of conduct for negligent conduct is substantive issue).

Third, classifying § 1281.2(c) as procedural comports with general definitions of the term "procedure." Although this court has not defined the terms "procedural" and "substantive" in the context of choice-of-law analysis, we have held in a different setting that a rule is procedural if it does not address "rights or liabilities" but merely "outlines the method by which the ... action may proceed...." *Nunley v. Nunley,* 210 A.2d 12, 14 (D.C.1965). The Supreme Court has described procedural law as relating to "the manner and the means by which the litigants' rights are enforced"; whereas substantive law "alters the rules of decision by which [the] court will adjudicate [those] rights." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 130 S.Ct. 1431, 1442, 176 L.Ed.2d 311 (2010) (citations and internal quotation marks omitted; alterations in original). The court's authority under § 1281.2(c) to stay arbitration pending the outcome of litigation could affect the order and timing of proceedings, but does not directly alter substantive entitlements or standards of conduct or directly determine the enforceability of the arbitration clause.

agreement contains a provision specifying

that California procedures should govern.

Nor was § 1281.2(c) intended to directly affect substantive matters; the California Supreme Court has explained that § 1281.2(c) is designed to avoid "duplication of effort" and "conflicting rulings on common issues of fact and law amongst interrelated parties." *Cronus*, 25 Cal. Rptr.3d 540, 107 P.3d at 228.

Mr. Parker argues that the California Supreme Court, in *Cronus*, held that "application of California law necessarily include[s] ... § 1281.2." Even if Mr. Parker's characterization of the holding of *Cronus* were accurate, however, this court must apply its own choice-of-law rules. As we have explained, under those rules, forum procedures apply. Therefore the Superior Court would not have been required to apply § 1281.2(c) and stay the arbitration, even if California substantive law were applicable.[15]

We therefore conclude that the trial court was correct to apply District of Columbia procedural law, and we find it is unnecessary to determine which substantive body of law governs this case.[16]

**B.**

■ Finally, Mr. Parker asserts that the trial court offended the Full Faith and Credit Clause and the Due Process Clause of the United States Constitution by failing to apply § 1281.2(c). We conclude that,

even if California substantive law governed this dispute, applying District of Columbia procedures would not violate the Full Faith and Credit Clause. *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 722, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988) ("The Full Faith and Credit Clause does not compel a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate. Since the procedural rules of its courts are surely matters on which a State is competent to legislate, it follows that a State may apply its own procedural rules to actions litigated in its courts.") (internal quotation marks and citation omitted). Nor would application of our procedural law violate Mr. Parker's rights under the Due Process Clause. *See id.* at 729–30, 108 S.Ct. 2117 (application of forum state's statute of limitations does not violate Due Process Clause). The cases which Mr. Parker cites in support of his constitutional claims are unhelpful to Mr. Parker, because they involve either the application of a state's substantive law or the invalidation of part of a contract.[17] The order compelling arbitration did not offend Mr. Parker's constitutional rights.

The judgment of the trial court is therefore

*Affirmed.*

---

**15.** Because we find § 1281.2(c) inapplicable as a matter of local choice-of-law rules, we do not address K & L Gates's argument that the FAA would preclude application of § 1281.2(c).

**16.** Accordingly, we deny K & L Gates's Motion to Correct or Modify the Record, which sought to provide the court with additional information potentially relevant to the choice-of-law issue.

**17.** *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) (interpreting Due Process Clause; "for a State's *substantive law* to be selected in a

constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts....") (emphasis added); *John Hancock Mut. Life Ins. Co. v. Yates*, 299 U.S. 178, 182–83, 57 S.Ct. 129, 81 L.Ed. 106 (1936) (given limited contacts between forum state and underlying conduct, Due Process Clause precluded application of substantive part of forum law); *Home Ins. Co. v. Dick*, 281 U.S. 397, 409, 50 S.Ct. 338, 74 L.Ed. 926 (1930) (given limited contacts between forum state and underlying conduct, Due Process Clause precluded enforcement of forum statute invalidating contract provision requiring suit be brought within one year).

FERREN, Senior Judge, with whom EASTERLY, Associate Judge, joins, concurring:

We join the opinion of the court. Had we written it, however, we would have substituted the following footnote 4 (or equivalent in the text) for the footnote in the court's opinion that references the concurring opinions.

4. In *American Fed'n of Gov't Emps., AFL–CIO v. Koczak*, 439 A.2d 478, 479 (D.C.1981), this court opined: "We hold that under section 18 of the District of Columbia Uniform Arbitration Act [UAA], D.C.Code 1978 Supp., tit. 16 app., § 18," a trial court order compelling arbitration "is interlocutory and unappealable." The court reached this decision by noting, first, that the statutory list of final orders in § 18 omitted "an order to compel arbitration." *Id.* at 480. The court then applied a canon of statutory construction, "*expressio unius est exclusio alterius,*" referenced the UAA's "meager legislative history" and found "no indication in either ... that the Council did not intend the Act's list of appealable final orders to be exhaustive." *Id.*

In the midst of its discussion of the *expressio unius* canon, the court also noted that this "omission ... [was] consistent with the 'general rule that ... an order is final for purposes of appeal ...

[when] it disposes of the entire case on the merits.'" *Id.* (quoting *Crown Oil and Wax Co. of Delaware v. Safeco Ins. Co. of America*, 429 A.2d 1376, 1379 (D.C.1981) (identifying and construing general rule of D.C.Code 1973 § 11–721(a)(1) (jurisdiction of appeals))). The court applied that rule, concluding that "[a]n order to compel arbitration does not dispose of the entire case on the merits." *Id.* (citing *School Committee of Agawam v. Agawam Educ. Ass'n*, 371 Mass. 845, 359 N.E.2d 956, 957 (1977) (holding non-final an order denying request to stay arbitration)).

The court then concluded its statutory analysis, stating that "the Council's omission of an order to compel arbitration from the Act's list of orders deemed to be final means that such an order is interlocutory and, hence, unappealable." *Id.* The court added that its construction of the UAA was "in accord with the construction arrived at by all other jurisdictions which thus far have addressed this issue." *Id.* at 481.[1]

*Koczak*'s reference to consistency with a "general rule" in the statute governing appeals, as applied to foreclose finality of an order to compel arbitration, was non-binding dictum because: (1) the decision in *Koczak* was limited to construction and application of the UAA; and (2) the referenced "consistent" general rule, as construed to bar finality, was not clearly "necessary"[2] or alternative[3] to

1. *Koczak* relied here on four state court decisions, all of which construed the UAA with *expressio unius* analysis (without citing the canon as such). None relied, in addition, on a statutory (or other) general rule of finality. *See Clark County v. Empire Electric, Inc.*, 96 Nev. 18, 604 P.2d 352, 353 (1980); *Harris v. State Farm Mut. Automobile Ins. Co.*, 283 So.2d 147, 148 (Fla.App.1973); *Maietta v. Greenfield*, 267 Md. 287, 297 A.2d 244, 246–47 (1972); *Roeder v. Huish*, 105 Ariz. 508, 467 P.2d 902, 903 (1970). In relying on these state court decisions, the *Koczak* court said, "[W]e thereby give effect to our legislature's intention ... that 'this Act shall be construed

as to effectuate its general purpose of making uniform the law of the District of Columbia and those states which enact it.'" *Koczak*, 439 A.2d at 481 (statutory citation omitted).

2. *See Lee v. United States*, 668 A.2d 822, 827–28 (D.C.1995) (earlier division's articulation of "purported requirement" of punishment for lesser included offense "was not necessary for the disposition of the case, and thus constituted 'dictum' not binding on us under the doctrine of *M.A.P. v. Ryan*") (citation omitted); *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("When an opinion issues for the

the *expressio unius* rationale for non-finality under the UAA, relied on in *Koczak* and the other states cited. Accordingly, the decision that binds us here is not *Koczak* but *Carter v. Cathedral Ave. Coop.*, 658 A.2d 1047, 1050 n. 5 (D.C.1995)—the first decision to apply *in its holding* the general rule under Title 11 of the D.C.Code (then § 11–721(a)(1) (1989)) as to finality of an order compelling arbitration when a party sues only to compel arbitration.

Our reasons for this strictly-construed reading of *Koczak* are attributable to a concern that an expansive view of a "holding" in this jurisdiction—such as the view our colleague sponsors—is likely to obstruct orderly and appropriate development of the law, whereas this court should be able to advance the law freely unless a prior decision unambiguously stands in the way, permitting change only after en banc review.[4]

■ When, therefore, does a prior decision of this court reflect a "holding" that binds the division hearing the case? This court has "equated binding precedent under *M.A.P.* with the rule of *stare decisis*," which "is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question."[5] Accordingly, for purposes of binding precedent, a holding is a narrow concept, a statement of the outcome accompanied by one or more legal steps or conclusions along the way that—as this court and other have repeatedly held—are "necessary" to explain the outcome; other observations are dicta.[6]

In this case, we do not agree that *Koczak*'s characterization of the UAA as "consistent with" this jurisdiction's "general rule" of finality can reasonably be interpreted as part of *Koczak*'s holding. To us, *Koczak*'s statement that a reasoned, statutory ruling is merely "consistent with" some other rule of law falls outside the universe of "holdings"; it amounts, rather, to an observation that the court

Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." (citations omitted)); *United States v. Science Applications Inter. Corp.*, —— F.Supp.2d ——, ——, 04–1543(RWR), 2013 WL 3791423, *7 (D.D.C. July 22, 2013) ("[T]he language was neither the result of the D.C. Circuit's opinion nor portions of the opinion necessary to that result. As such, it is dictum and is not controlling." (internal quotation marks, footnote, and citation omitted)).

3. *See, e.g., Woods v. Interstate Realty Co.*, 337 U.S. 535, 537–38, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) (stating that "where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*" and confirming that *Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947) held a suit could not be maintained because of both *res judicata* and *Erie* doctrine); *Union Pac. R.R. Co. c. Mason City and Fort Dodge R.R. Co.*, 199 U.S. 160, 165–66, 26 S.Ct. 19, 50 L.Ed. 134 (1905) (affirming on both contractual and statutory grounds).

4. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[W]e have adopted the rule that no division of this court will overrule a prior decision of this court or refuse to follow a decision the United States Court of Appeals rendered prior to February 1, 1971, and that such result can only be accomplished by this court en banc." (footnote omitted)).

5. *United States v. Debruhl*, 38 A.3d 293, 298 (D.C.2012) (internal quotation marks, footnotes, and citation omitted). Our colleague stresses that in *Koczak*, when the "judicial mind [was] applied to and passed upon the precise question," *id.*, the question was "whether orders compelling arbitration are final and appealable under general principles of finality." *Post* at 51. Respectfully, and to the contrary, we believe that the precise question at issue is narrower: whether the general rule of finality under Title 11 of the D.C.Code was clearly necessary, or expressed as an alternative, to the court's interpretation of the UAA.

6. See *supra* note 2.

found it interesting, perhaps even comforting, to note the likelihood of another approach toward the same end, but not a statement confirming a "necessary" ingredient of the outcome. Put another way, the reference to the general rule is much like a "*cf.*" citation to the UAA holding, absent language indicating more clearly that the general rule was necessary, or expressed as an alternative, to the statutory interpretation.

We recognize that too crabbed a reading of a judicial decision can undermine the sound policy reflected in *M.A.P. v. Ryan*[7]; a later division of the court should not ignore the holding of an earlier division on which the public and the bar had good reason to rely. We further recognize that not all judicial decisions are crystal clear about the essentials inherent in the outcome; one person's clarity can be another's ambiguity. That said, however, we believe this court should be held to a high enough level of clarity about essentials that the court does not invite *Thomas*[8] inquiries so readily that the dynamic of decision-making focuses backward, not forward. At a minimum, therefore, as this court has held,[9] we must expect language from the court that communicates a clear understanding of the ingredients "necessary" to every "holding." The "consistent with" language of *Koczak* fails that test; it posits no more than a parallel legal universe, not an integrated component of a two-part holding. As our colleague himself acknowledges: "If only rulings essential to the outcome can constitute holdings, it is unclear at best whether the statement at issue in *Koczak* would properly be viewed as a holding." *Post* at 877.

This acknowledgment leads to our second disagreement. Our colleague's reasoning appears to turn on his belief that *Koczak*'s "consistent with" language can be part of the holding without being "necessary" to it. He stresses that "it is not accurate to say that only rulings essential to the outcome can constitute holdings." *Post* at 877. He offers three examples. First, he cites a judgment that "rests on two independent and alternative rationales." *Post* at 878. That can occur, but this example is inapposite here (as our colleague appears to agree). Moreover, if there were holdings truly in the alternative, each presumably would be fully developed and deemed necessary to the outcome in the absence of the other.[10] We do not believe one can credibly say that, without the *expressio unius* analysis that is the central focus of the opinion, *Koczak*'s general rule comments would alone have been sufficient to decide the case.

For the next two examples, our colleague observes that a successful defense of qualified immunity, or a ruling that preserves a conviction in the absence of plain error, reflects an outcome that would mask a significant ruling unless the holding were defined to include the threshold determination—the culpability or unpreserved trial court error—that the ultimate disposition erases. All this is true, but these examples, as our colleague would have it, do not negate the proposition that "only rulings essential to the outcome can constitute holdings." *Post* at 877. Both reflect sequential, fully developed, and thus necessary two-step rulings. Ordinarily, there would be no ruling of qualified immunity without a predicate ruling of misconduct, and there would be no deci-

---

7. See *supra* note 4.

8. *Thomas v. United States*, 731 A.2d 415, 420 n. 6 (D.C.1999) ("Where a division of this court fails to adhere to earlier controlling authority, we are required to follow the earlier decision rather than the later one.")

9. See *supra* note 2.

10. See *supra* note 3.

sion rejecting plain error absent a predicate ruling of trial court error.[11] If, on the other hand, the court were merely to assume misconduct but find it excusable, or to assume trial court error but find it neither plain nor harmful, there would be but one analysis with a dispositional holding. None of our colleague's examples, therefore, eliminates the requirement that a statement, to be part of the holding, must be "necessary for the disposition of the case."[12]

Finally, there can be no question that the *Koczak* court did not perceive a jurisdictional issue anterior to the UAA interpretive issue. Indeed, our colleague acknowledges that, if the *Koczak* court had recognized the Home Rule Act (and thus the full Title 11) implications of its decision, the court would have "thought it quite important," *post* at 877 n. 1, (we would say "felt compelled") to reconcile the UAA and general rule theories, which *Koczak*—by ignoring that larger analytic framework—did not correctly do. Moreover, if the court had attempted to do so, *Koczak* itself presumably would have come out differently, in favor of finality and appealability, as *Carter*'s interpretation of the general rule under Title 11 makes clear (a result the court reaffirms today).[13] But suppose instead that the *Koczak* court,

in addition to its UAA interpretation, had identified the jurisdictional issue and expressly held in the alternative—without more analysis or citation than it offered—that the general rule of finality left the order to compel arbitration as a non-appealable interlocutory order. In that situation *Carter*, and thus this division, would have been bound to follow *Koczak*'s double holding[14] (absent intervening action by the en banc court). Fortunately, however, *Koczak* did not announce a double holding, but it would have amounted to that if the *Carter* court had taken an expansive view of *Koczak* and elevated its "consistent with" language to a necessary, independent component of the holding.

The sequence from *Koczak* to *Carter* to this case reveals the importance of making sure that statements claimed to be part of a holding that binds future divisions are assuredly necessary to resolution of the case in which they are made. This is especially true when, as in *Koczak*, the analysis underlying the "consistent with" statement not only is scanty but also omits attention to the threshold enabling legislation (Title 11), as limited by the Home Rule Act.[15] The correct analysis of Title 11, when applied to the precise issue here,[16] would have undermined the very holding that the *Koczak* opinion announced.[17] We

**11.** Contrary to our colleague's observation, see *post* at 52, *Koczak*'s reference to the general rule is not sequential in the sense used in his examples: building upon an essential predicate ruling.

**12.** *Lee,* 668 A.2d at 828.

**13.** In *Carter v. Cathedral Ave. Coop., Inc.,* 658 A.2d 1047 (D.C.1995), this court held that under Title 11 of the D.C.Code, "when a party sues only to compel arbitration, 'an order granting or denying relief' is an appealable final order." *Id.* at 1050 n. 5 (quoting *Brandon v. Hines,* 439 A.2d 496, 505 (D.C.1981)). Issued five days after *Koczak,* the *Brandon* decision construed and applied the District's general rule of finality under Title 11 by reference to the policy underlying the "federal

appellate jurisdictional statute." *Brandon,* 439 A.2d at 509.

**14.** See *supra* note 3.

**15.** The Home Rule Act prohibits the Council of the District of Columbia from legislating "with respect to any provision of Title 11" of the D.C.Code. D.C.Code § 1–206.02(a)(4) (2012 Repl.).

**16.** See *supra* note 5.

**17.** After *Koczak,* this court held in *Carter,* see *supra* note 13, that under Title 11 of the D.C.Code an order to compel arbitration is an appealable final order when a party has sued only to compel arbitration. Therefore, had

therefore cannot believe that this court properly could, let alone would, take the mere "consistent with" language in *Koczak*, untested by Title 11 analysis in light of the Home Rule Act, and bootstrap that ambiguous observation into the holding—into a "necessary" component of the court's resolution.

We are concerned that, if this court were to take seriously our colleague's belief that *Koczak*'s "consistent with" language "may well" be part of the holding when "correctly interpreted," *post* at 879, we would spread wide the concept of a "holding" too far. There would be a danger that prior decisions can dictate the results of future ones (absent later en banc review) when in fairness to the instant cause the prior decision should be understood for no more than its outcome, based on explicit reasons applied with clarity to described facts. The prior decision should not be construed more broadly by reference to nonessential, often ambiguous, sentences that can trigger hours of discussion as to whether the earlier decision was a binding holding or dictum.

Our colleague's ruminations about the impact, if any, of *Koczak* are, without doubt, interesting. They discuss important questions that, in a proper case, would plumb the depths of what a holding is under *M.A.P. v. Ryan*, and whether a later court's interpretation of that holding is binding authority when the issue comes to the court a third time. In our judgment, however, this is not a close case that justifies the extensive, including speculative, analysis our colleague offers. We therefore decline to join that analysis, in order to help assure that the court will not send

an improvident signal expanding the reach of this court's *M.A.P.* decision.

McLEESE, Associate Judge, concurring:

I write separately to explain why I conclude that we are bound by the holding of *Carter v. Cathedral Ave. Coop., Inc.*, 658 A.2d 1047 (D.C.1995), that orders compelling arbitration in independent proceedings are final and appealable under the general principles of finality reflected in D.C.Code § 11–721(a)(1). I find that issue somewhat complicated, because this court has previously stated that orders compelling arbitration in independent proceedings are non-final and non-appealable under general principles of finality. *See American Fed'n of Gov't Emps., AFL–CIO v. Koczak*, 439 A.2d 478, 480 (D.C.1981). For several reasons, however, I conclude that we are bound by the holding of *Carter* rather than the statement in *Koczak*.

In *Koczak*, the court was interpreting the District of Columbia Uniform Arbitration Act of 1977 ("UAA"), D.C. Law 1–117, 23 D.C. Reg. 9690 (Apr. 26, 1977), *repealed by* Arbitration Act of 2007, D.C. Law 17–111, 55 D.C.Reg. 1847, 1863 (Feb. 29, 2008). The UAA explicitly listed certain types of arbitration-related orders as final, but did not include orders compelling arbitration. *Koczak*, 439 A.2d at 480. Relying heavily on that omission, this court held that such orders were non-final and non-appealable. *Id.* Although *Koczak*'s holding rested in substantial part on the specific wording of the UAA, *Koczak* also stated that its interpretation of the UAA was consistent with this court's general approach to determining the finality of or-

---

*Koczak* construed and applied Title 11, the court's enabling legislation, to the order to compel arbitration *before* interpreting the UAA, this court presumably would have recognized that Title 11 authorized the appeal,

and thus that under the Home Rule Act, see *supra* note 15, the UAA would have to be construed accordingly, not to the contrary under *expressio unius* analysis.

ders. *Id.* ("Furthermore, the Council's omission of an order to compel arbitration from the list of orders deemed to be final set forth in [the UAA] is consistent with the 'general rule that ... an order is final for purposes of appeal ... [when] it disposes of the entire case on the merits.'") (quoting *Crown Oil & Wax Co. of Del. v. Safeco Ins. Co. of Am.*, 429 A.2d 1376, 1379 (D.C.1981) (internal quotation altered by *Koczak*).)

*Koczak*'s conclusion that orders compelling arbitration are non-final under general principles of finality was not a stray comment. Rather, the court cited authority in support of its conclusion, and relied on that conclusion as part of the legal support for its ultimate determination that the Council intended such orders to be non-final under the UAA. *See Koczak*, 439 A.2d at 480. Moreover, it was appropriate for the court in *Koczak* to rely on general principles of finality when interpreting the UAA, because a well-settled canon of construction favors interpreting statutes so as to be consistent with, rather than contrary to, general background principles of law. *See, e.g., Rehberg v. Paulk*, —— U.S. ——, 132 S.Ct. 1497, 1502, 182 L.Ed.2d 593 (2012) ("statute[s] must be read in harmony with general principles of tort immunities and defenses rather than in derogation of them") (internal quotation marks omitted).

There is substantial authority for the principle that the legal reasoning upon which a court relies in support of a holding is itself also a holding. *See, e.g., Seminole Tribe v. Florida*, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("As a general rule, the principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also to their explica-

tions of the governing rules of law.") (quoting *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 668, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (Kennedy, J., concurring and dissenting)); *United States v. Meyers*, 200 F.3d 715, 720 (10th Cir.2000) ("precedent ... includes not only the very narrow holdings of those prior cases, but also the reasoning underlying those holdings, particularly when such reasoning articulates a point of law"); *see generally, e.g.,* Michael Abramowicz & Maxwell Stearns, *Defining Dicta*, 57 Stan. L. Rev. 953, 1065 (2005) ("A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment."). Under such an approach, *Koczak*'s conclusion about general principles of finality would properly be viewed as a holding.

On the other hand, this court has often said that reasoning "not necessary for the disposition of the case ... constitute[s] 'dictum' not binding on us...." *Lee v. United States*, 668 A.2d 822, 827–28 (D.C. 1995); *see also, e.g., Burgess v. Square 3324 Hampshire Gardens Apts., Inc.*, 691 A.2d 1153, 1155 (D.C.1997). The statement at issue in *Koczak* is not explicitly labeled as essential to the court's reasoning, and if I were forced to speculate I would guess that the court in *Koczak* would have reached the same conclusion even leaving aside general principles of finality.[1]

If only rulings essential to the outcome can constitute holdings, it is unclear at best whether the statement at issue in *Koczak* would properly be viewed as a holding. In my view, however, it is not

---

1. If the court in *Koczak* had in mind possible Home Rule Act issues, see *ante* at 864, however, then the court could have thought it quite important that the opinion include an explicit statement that the court's interpretation of the UAA was consistent with its understanding of general principles of finality.

accurate to say that only rulings essential to the outcome can constitute holdings. Several lines of authority illustrate the point.

First, the Supreme Court has held that where a judgment rests on two independent and alternative rationales, both rationales are holdings rather than dicta, even though strictly speaking neither rationale would be essential to the resolution of the case. *See, e.g., Woods v. Interstate Realty Co.*, 337 U.S. 535, 537, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum.") (citing cases); *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 340, 48 S.Ct. 194, 72 L.Ed. 303 (1928) ("It does not make a reason given for a conclusion in a case obiter dictum, because it is only one of two reasons for the same conclusion.").

Second, the Supreme Court has also held that the conclusion that an official's conduct was unlawful constitutes a holding even if the court goes on to rule that the official was entitled to qualified immunity because the conduct at issue did not violate clearly established law. *See Camreta v. Greene*, —— U.S. ——, 131 S.Ct. 2020, 2032, 179 L.Ed.2d 1118 (2011) (where public official asserts qualified-immunity defense, court's holding that challenged conduct violates Constitution is "[n]o mere dictum," but rather "creates law that governs the official's behavior," even where court also determines that official is entitled to immunity because unconstitutionality was not clearly established). Under a strict principle of necessity, the rule would be otherwise, because the court's ruling on qualified immunity renders the antecedent ruling that the conduct was illegal unnecessary to the outcome of the case.

Third, this court has written many opinions concluding that an error occurred but going on to conclude that the error did not warrant reversal. Under a strict principle of necessity, the conclusions of error in such cases are non-binding dicta, rather than holdings, because they are unnecessary to the disposition of the appeal in light of the conclusion that any error did not warrant reversal. But this court consistently treats such rulings as holdings. *See, e.g., Thomas v. United States*, 914 A.2d 1 (D.C.2006) (in criminal case, admission of drug-analysis report in absence of testimony from chemist who prepared report violated Confrontation Clause; error did not warrant reversal under plain-error standard); *Little v. United States*, 989 A.2d 1096, 1105 (D.C.2010) ("this case is similar to *Thomas* where we held that the Confrontation Clause error of admitting a DEA chemist's report without live testimony from the chemist who wrote it did not seriously affect the fairness, integrity or public reputation of the judicial proceedings...."); *see also, e.g.*, Michael C. Dorf, *Dicta and Article III*, 142 U. Pa. L.Rev. 1997, 2045–46 (1994) (noting that, if necessity is required for rulings to be holdings, ruling that error occurred is dicta if court finds error harmless; arguing that under proper analysis such rulings should be viewed as holdings).

As the foregoing suggests, I agree with the observation that, "remarkably—considering how fundamental the distinction is to a system of decision by precedent—the distinction [between holding and dictum] is fuzzy not only at the level of application but at the conceptual level." Richard A. Posner, *The Federal Courts: Crisis and Reform* 252–53 (1985); *see also, e.g., Metropolitan Hosp. v. United States Dep't of Health & Human Servs.*, 712 F.3d 248, 258 (6th Cir.2013) ("[T]he line between holding and *dictum* is not always clear....") (internal quotation marks omitted). I thus find it a difficult question whether the statement at issue in *Koczak* is better viewed as a holding or as dicta. Fortu-

nately, however, I do not find it necessary to definitively resolve that question. Either way, in my view, this court should properly follow the square holding of *Carter*.

If the court in *Carter* had simply overlooked *Koczak*, and if the general finality discussion in *Koczak* were correctly viewed as a holding, then we would be bound in this case to follow *Koczak* rather than *Carter*, because *Koczak* was the earlier decision. *See Thomas v. United States*, 731 A.2d 415, 420 n. 6 (D.C.1999) (holding that, where division of court is faced with two conflicting prior decisions of the court, "we are required to follow the earlier decision rather than the later one"). *Carter* did not overlook *Koczak*, however.

The contract at issue in *Carter* was entered into before the passage of the UAA, and the *Carter* court therefore was applying general principles of finality under D.C.Code § 11–721(a)(1) (1989), rather than the UAA, which was at issue in *Koczak*. 658 A.2d at 1050 n. 5. *Carter* quoted *Koczak* for the proposition that "[t]he provisions of the [UAA] are applicable only to agreements to arbitrate which were made subsequent to the adoption of the [UAA]," but *Carter* did not explicitly address the broader finality discussion in *Koczak*. *Id.* at 1051 n. 5. Rather, apparently treating *Koczak* as applicable only to contracts governed by the UAA, *Carter* analyzed the finality under Title 11 of orders to compel arbitration in independent proceedings as a question of first impression in this jurisdiction. *Id.* Adopting the general approach employed by federal courts, *Carter* concluded that such orders are final.

*Id.* ("[In an independent proceeding] in the federal courts ... an order granting or denying relief is an appealable final decision.... Therefore, since this court finds persuasive the interpretation of the federal courts in determining their appellate jurisdiction, the order in the present case is a final order subject to appellate review.") (internal quotation marks and citation omitted).

For reasons I have already explained, I think that *Koczak*, correctly interpreted, may well have held that orders compelling arbitration in independent proceedings are non-final and non-appealable under general principles of finality. It thus is not clear to me that *Carter* correctly interpreted *Koczak*. That poses the question whether I am bound to follow *Koczak*, as the earlier decision, or instead am bound to follow *Carter*'s interpretation *of Koczak*, even if I would conclude that *Carter*'s interpretation of *Koczak* was incorrect and that *Carter* actually conflicts with *Koczak*. Framed more generally, the question is how a later court should proceed if it believes that there is a conflict between an initial binding precedent and a subsequent decision that interpreted the initial precedent.

I do not understand this court to have decided that general question. As previously noted, this Court held in *Thomas* that where a division of the court confronts two conflicting prior decisions of the court, the court is obliged to follow the earlier decision. 731 A.2d at 420 n. 6. But *Thomas*, and most of our cases applying *Thomas*, involved situations where the subsequent conflicting decision had not explicitly discussed the relevant part of the initial precedent. *See id.* ("there is no indication in *Townsend* [*v. United States*, 512 A.2d 994 (D.C.1986)] that *Proctor* [*v. United States*, 404 F.2d 819 (D.C.Cir.1986)] and *Brewster* [*v. United States*, 271 A.2d 409 (D.C.1970)] were brought to the attention of the court"); *see also, e.g., Wagley v. Evans*, 971 A.2d 205, 212 (D.C.2009) (following earlier line of cases, rather than *Hackes v. Hackes*, 446 A.2d 396 (D.C. 1982), and *Li v. Lee*, 817 A.2d 841 (D.C. 2003); neither *Hackes* nor *Li* cited to relevant holdings of earlier line of cases).

Where a division of this court has followed an initial precedent rather than a subsequent decision interpreting that precedent, the division either has not acknowledged that the subsequent decision attempted to distinguish the initial precedent, *see Taylor v. First Am. Title Co.*, 477 A.2d 227, 229–30 (D.C.1984), or has noted that the subsequent division's interpretation was dicta, *see Ellis v. United States*, 834 A.2d 858, 858–59 (D.C.2003) (per curiam). I thus view it as an open question how the court should proceed when faced with a perceived conflict between the holding of an earlier decision and the holding of a later decision that has expressly addressed the earlier decision.[2] Whatever the answer to that question may be in other circumstances, I conclude that in the circumstances of this case the proper course is to follow the square holding of *Carter* rather than the statement in *Koczak*. I reach that conclusion for two principal reasons.

First, as I have already noted, it is not in my view an easy question whether the statement in *Koczak* was a holding. It thus was not unreasonable for the division in *Carter* to conclude that *Koczak* did not preclude *Carter* from holding that an order compelling arbitration in an independent proceeding is final and appealable under general principles of finality law.

Second, the conclusion reached in *Carter* seems to me clearly correct as an original matter. We have held that an order is final "if it disposes of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered." *In re Estate of Chuong*, 623 A.2d 1154, 1157 (D.C.1993) (en banc) (internal quotation marks omitted). Once the trial court issues an order compelling arbitration in an independent proceeding, it is natural to conclude that nothing remains to be done, because there are no other pending claims or requests for relief. *Cf. Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 86–89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (holding that order compelling arbitration and dismissing other claims was final because it "plainly disposed of the entire case on the merits and left no part of it pending before the court"). Moreover, the holding of *Carter* maintains uniformity between the law of this jurisdiction and federal law, which is what was likely intended by Congress when it enacted Title 11 in 1970. District of Columbia Court Reorganization Act of 1970, Pub.L. No. 91–358, 84 Stat. 475, 480–81. At that time, federal courts consistently treated orders to compel arbitration in independent proceedings as final under 28 U.S.C. § 1291 (1970), the federal analogue to D.C.Code § 11–721(a)(1).[3] Pre-

2. Cases from other jurisdictions appear to take differing approaches to the question of how a court should proceed if it believes that there is a conflict between an initial binding precedent and a subsequent decision that interpreted the initial precedent. *Compare, e.g., Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 371 n. 4 (5th Cir.1997) ("To the extent that Walton believes that we have construed [a prior Supreme Court opinion] incorrectly, we note that absent an intervening Supreme Court decision or a decision by this court sitting en banc, we are bound by a prior panel's interpretation."), *and Grabowski v. Jackson Cty. Pub. Defenders Office*, 47 F.3d 1386, 1400 n. 4 (5th Cir.1995) (Smith, J., concurring in part and dissenting in part)

("[A] panel cannot overrule, or declare void, a prior panel's *interpretation* of earlier circuit caselaw, even if it appears flawed."), *vacated on reh'g en banc*, 79 F.3d 478 (1996) (per curiam), *with, e.g., Walker v. Mortham*, 158 F.3d 1177, 1187–89 & n. 21 (11th Cir.1998) (declining to follow subsequent decision because it had misinterpreted initial decision).

3. *See, e.g., Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba, S. A.*, 243 F.2d 342, 344–45 (2d Cir.1957) (holding that order compelling arbitration in independent proceeding is final under 28 U.S.C. § 1291); *Continental Grain Co. v. Dant & Russell Inc.*, 118 F.2d 967, 968 (9th Cir.1941) (same); *cf. Goodall–Sanford, Inc. v. United Textile Work-*

sumably, Congress would have intended the phrase "final orders" in § 11–721(a)(1) to similarly encompass orders compelling arbitration in independent proceedings. *Cf. Corley v. United States,* 416 A.2d 713, 714 (D.C.1980) ("we look to the interpretation of the federal statute for guidance in determining the construction of our own statute since it was based on the federal provision"). Thus, I conclude that *Koczak* erred in stating that its interpretation of the UAA was consistent with general principles of finality. In my view, that conclusion weighs in favor of following *Carter*'s holding rather than the statement in *Koczak.*

For these reasons, I believe that the proper course in this case is to follow *Carter* rather than *Koczak.*

In his concurring opinion, Judge Ferren concludes that the passage at issue in *Koczak* is clearly not a holding. I disagree with the reasoning in Judge Ferren's concurrence in four principal respects.

First, stressing the importance of being able to "advance the law," Judge Ferren's concurrence asserts that an earlier decision of this court should not be viewed as binding on later divisions unless that earlier decision "unambiguously stands in the way." *Ante* at 873; see also *ante* at 872–73 (statement in *Koczak* not holding because not "clearly" necessary). Judge Ferren's concurrence provides no authority, and I am not aware of any authority, for these assertions, under which ambiguity or lack of clarity about whether an earlier decision is a binding holding must be resolved in the negative. Such a "clear statement" rule would in my view be profoundly destabilizing to our law, given the frequency with which reasonable disputes

arise about the line between dicta and holding. *See generally, e.g., United States v. Johnson,* 256 F.3d 895, 914–15 (9th Cir. 2001) (en banc) (Kozinski, J. concurring) ("[J]udges often disagree about what is and is not necessary to the resolution of a case.... If later panels could dismiss the work product of earlier panels quite so easily, much of our circuit law would be put in doubt. No longer would the question be whether an issue was resolved by an earlier panel. Rather, lawyers advising their clients would have to guess whether a later panel will recognize a ruling that is directly on point as also having been necessary. We decline to introduce such uncertainty into the law of our circuit.").

Second, also contrary to the implication in Judge Ferren's concurrence, *ante* at 873–74 & n. 5, in *Koczak* the "judicial mind [was] applied to and passed upon the precise question" whether orders compelling arbitration are final and appealable under general principles of finality. The court's discussion of that question was accompanied by citations to authority and stated an unambiguous and unequivocal conclusion. 439 A.2d at 480. The discussion also was comparable in length to the discussion of the court's other reasons for reaching its ultimate conclusion about the proper interpretation of the UAA. *Id.* at 480–81. The passage at issue thus is not a careless aside.

Third, Judge Ferren's concurrence is in my view internally inconsistent. On one hand, it asserts that a legal conclusion is a holding only if the legal conclusion is "necessary for the disposition of the case." *Ante* at 875. On the other hand, Judge Ferren acknowledges that subsequent divi-

---

ers of Am., A.F.L. Local 1802, *353 U.S. 550, 551–52, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957)* ("Arbitration is not merely a step in judicial enforcement of a claim nor auxiliary to a main proceeding, but the full relief sought. A

decree under [the Labor Management Relations Act] ordering enforcement of an arbitration provision in a collective bargaining agreement is, therefore, a 'final decision' within the meaning of 28 U.S.C. § 1291.").

sions of the court are bound by alternative holdings, findings of error that do not warrant reversal, and determinations of official misconduct that do not provide a basis for liability because of official immunity. *Ante* at 874–75. As I have already noted, however, such rulings are not necessary for the disposition of the case. Judge Ferren's concurrence thus does not present a consistent theory of *stare decisis.* Judge Ferren's concurrence's only effort to explain this discrepancy is to describe the counter-examples as "sequential, fully developed, and thus necessary" rulings. *Ante* at 874. But Judge Ferren's concurrence does not-and could not-explain why a ruling that is sequential and fully developed is therefore necessary in the sense that Judge Ferren's concurrence is elsewhere using the word, i.e., "necessary for the disposition of the case."[4] Moreover, to the extent Judge Ferren's concurrence suggests that a legal conclusion need not be treated as a holding if a later division of the court is of the view that the legal conclusion is not "fully developed," such an approach seems even more destabilizing to our law than a "clear statement" requirement would be. Finally, if all that is required for a legal conclusion to be a holding is that the conclusion be "sequential" and adequately "developed," the passage at issue in *Koczak* would seemingly qualify.

Fourth, I do not agree with the suggestion that *Koczak*'s analysis is undermined by a failure to address Title 11 and the Home Rule Act. *Ante* at 875–76. As for Title 11, the court in *Koczak* cites and expressly discusses the pertinent provision of Title 11, D.C.Code § 11–721(a)(1). 439 A.2d at 479–80. That provision, in any event, simply uses the word "final," and thus adds nothing specific to the discussion in *Koczak* of general principles of finality. As for the Home Rule Act, the court's failure to address the issue in *Koczak* is entirely understandable: given the court's conclusion that orders compelling arbitration are non-final under both the UAA and general principles of finality embodied in Title 11, the court had no need to discuss the possible Home Rule Act issue that would have arisen if those provisions had pointed in opposite directions.[5]

---

4. Without citation to authority, Judge Ferren's concurrence states that "[o]rdinarily," a court would not either find qualified immunity without first finding official misconduct or find lack of prejudice without first finding error. *Ante* at 874–75. To the contrary, courts—including this one—often assume misconduct or error and affirm on the ground of immunity or lack of prejudice. *See, e.g., Camreta v. Greene,* —— U.S. ——, 131 S.Ct. 2020, 2031–32, 179 L.Ed.2d 1118 (2011) (courts have discretion whether to decide only issue of qualified immunity or whether instead to first decide whether official violated constitutional right and then consider whether official was protected by qualified immunity); *Harrison v. United States,* 76 A.3d 826, 842–43 n. 20, 2013 WL 4555711, *10 n. 20

(D.C. Aug. 29, 2013) (assuming error and holding that any error was harmless).

5. I am puzzled by the statement in Judge Ferren's concurrence that *Koczak* "presumably would have come out differently" if the court had considered the Home Rule Act when attempting to reconcile its analysis under the UAA with its analysis under general principles of finality. *Ante* at 875. In fact, the court in *Koczak* found no discrepancy to reconcile, because it concluded that its interpretation of the UAA was "consistent with" the court's understanding of general principles of finality. 439 A.2d at 480. There thus is no reason to suppose that explicit consideration of the Home Rule Act would have had any effect on the outcome of *Koczak.*